## MARE v. ALEXANDER.

(District Court, D. Massachusetts. November 28, 1924.)

No. 2015.

1. **Army and navy** ⬅️13(15)—**Withholding pay of naval officer to apply on alleged indebtedness to United States not authorized.**

Under Budget Act June 10, 1921 (Comp. St. Ann. Supp. 1923, §§ 400½–400⅘ii), there is no authority in the Comptroller General to withhold portion of pay of a naval officer because of latter's alleged indebtedness to United States.

2. **Mandamus** ⬅️3(6)—**Mandamus by naval officer to compel payment of salary proper remedy, not suit in Court of Claims.**

Mandamus is appropriate to compel payment of naval officer's pay without deductions for alleged indebtedness to United States, as required by Comptroller General's orders, and he is not required to sue in Court of Claims.

In Equity. Mandamus by Anton L. Mare against Edward Alexander. Writ granted.

Robert J. White, of Boston, Mass., for plaintiff.

John V. Sullivan, Asst. U. S. Atty., of Boston, Mass., and O. R. McGuire, Sp. Asst. Atty. Gen., for defendant.

LOWELL, District Judge. This was a petition asking that a writ of mandamus be issued to the paymaster of the United States cruiser Cleveland, directing him to pay to a naval lieutenant the full amount of his salary, without deducting therefrom, under an order of the Comptroller General, sums formerly paid to him under the designation of "rental and subsistence allowances" as support of his dependent mother. When the Comptroller General assumed office he issued an order, the legality of which is not contested, that the payment of such sums should cease. He further, however, issued the order raising the question in the case at bar—that no salary payments to the lieutenant and others in the same situation should in the future be made until all payments for such allowances had been made up. The Secretary of the Navy softened the rigor of this order by providing that only one-fifth of each salary installment should be deducted.

The question is a serious one, as it concerns the interpretation of a provision of one of the most important pieces of legislation ever passed by the Congress. It involves the Budget and Accounting Act of June 10, 1921, c. 18, 42 Stat. 20, Comp. Stats. 1923 Supp. §§ 400½–400⅘ii, establishing a budget system, in a belated endeavor, never before seriously attempted by the national Legislature, to make the expenditures of the government bear some relation to its income. The main features of the act do not concern the present discussion, but with one of them, to which reference will be made hereafter, we are directly concerned. It is necessary, however, to describe briefly the new administrative department established by the act. It provided for a General Accounting Office under the control

of a General Comptroller, whose position was made one of great dignity. He was to be appointed for 15 years, and was ineligible for reappointment. He could be removed only by joint resolution of Congress or by impeachment. His principal duties related to the preparation of a budget, but that with which the case at bar is concerned had to do with the settlement of claims against the United States.

The necessary formalities at one time incident to the payment of such claims would be incredible were they not vouched for by the considered opinion of a learned judge. In McKnight v. U. S., 13 Ct. Cl. 292, Judge Richardson describes the settlement of an account in the War Department. It went first to the Second Auditor, then to the Second Comptroller, then back to the Auditor, then to the Secretary of War, then to the Secretary of the Treasury, then to the Second Comptroller again, then to the Auditor again, then to the Secretary of the Treasury again, then to the Treasurer of the United States, then to one of his Assistant Secretaries, then to the First Comptroller, then to the Register, then to the Treasurer again, then to the Register again, who finally delivered the warrant to the party interested. After describing this long journey, the learned judge remarks: "Then, and not till then, is the settlement consummated and payment authorized." 13 Ct. Cl. at page 301.

This was in 1877, and the process of paying claims may have been simplified since then; but one of the objects of the new budget accounting system was to render the process less cumbersome. To that end it provides that the duties of the Comptroller of the Treasury and the six Auditors of the Treasury Department, and also certain duties of the Division of Bookkeeping and Warrants of the Office of the Secretary of the Treasury, shall be transferred to the General Accounting Office. Act June 10, 1921, c. 18, § 304, 42 Stat. 24, Comp. St. 1923, Supp. § 400⅘b.

With this attempt to introduce sensible methods into the administration of the business of the government, it is the duty of the United States courts to be in thorough accord. But it is also their duty to carefully consider the powers of this new official —the Comptroller General—when the rights of individuals are affected by his acts. The question raised by the case at bar depends on the meaning of section 305 of the law which amends section 236, Revised Statutes. It reads as follows:

"Section 236 of the Revised Statutes is amended to read * * *:

" 'Sec. 236. All claims and demands whatever by the government of the United States or against it, and all accounts whatever in which the government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office.' " Act June 10, 1921, c. 18, § 305, 42 Stats. 24, Comp. Stats. 1923, Supp. § 368.

The phraseology of this new section is substantially the same as before, and shows that no greater powers were given by it to the Comptroller General than had been enjoyed by his predecessors.

The corresponding section of earlier laws has been often construed. It is settled that this section does not apply to cases relating to the payment of salaries to government officials. 20 Op. Attys. Gen. 626; Smith v. Jackson, 241 F. 747, 154 C. C. A. 449; Smith v. Jackson, 246 U. S. 388, 38 S. Ct. 353, 62 L. Ed. 788; Dillon v. Groos (D. C.) 299 F. 851; Howe v. Elliott (D. C.) 300 F. 243. And see 9 Op. Attys. Gen. 197; 26 Op. Attys. Gen. 77.

The general situation has been so ably discussed in a luminous opinion by Judge Clayton, which received the unusual but well-deserved honor of being adopted by the Supreme Court of the United States, that it is only necessary to refer to that case. Smith v. Jackson, ubi supra.

The precise question here raised has been decided in an able opinion by Judge Sheppard in Dillon v. Groos, ubi supra, whose conclusion I adopt. See, also, Howe v. Elliott, ubi supra, where the question involved was somewhat different.

The government's contentions were ably argued before me and set forth in a learned brief. The argument is seriously urged that the authorities heretofore cited, especially those relating to judicial salaries, do not apply, as the United States judges stand on a plane far above that of a mere officer of the navy. This argument, however flattering to an occupant of the bench, seems ill-founded. I know of no divinity which doth so hedge about a judge as to make his salary more sacred than that of any other government official, with the single exception of the constitutional provision, on which the government lays great stress, forbidding its diminution during his tenure of judicial office. Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519.

This contention, however, loses all its weight in the criticism of Smith v. Jackson, as in that case the judge of the Canal Zone

was not protected by the constitutional provisions. ·241 F. 747, 751, 154 C. C. A. 449; McAllister v. U. S., 141 U. S. 174, 11 S. Ct. 949, 35 L. Ed. 693.

[2] The government further contends that the relator in this case has mistaken his remedy, as he should have sued in the Court of Claims. The answer to this contention is that the Comptroller General has mistaken his remedy. Instead of recovering for the United States the sum deemed to be due by an imperial fiat—let this be done—without hearing the parties in interest he should have instituted a suit in a court of justice. U. S. v. Olmstead, 118 F. 433, 55 C. C. A. 249. Doubtless it would be convenient if the matter could be settled by the simple process of ordering the disbursing officer to withhold the lieutenant's salary—in the language of the street, "docking his pay"—but no such arbitrary power has been invested in the Comptroller General by this new legislation. As Judge Clayton emphatically remarks: "There cannot be such an autocrat. Our government cannot be reduced to a bureaucracy." 241 F. 747, 755, 758, 154 C. C. A. 449, 460.

Petition granted.