McCARL, Comptroller General, et al. v. COX.

(Court of Appeals of District of Columbia. Submitted October 15, 1925. Decided November 2, 1925.)

No. 4287.

Army and navy ☜13(2)—Comptroller General may not deduct from salary of naval officer sum found due because of alleged overpayments in allowances.

Comptroller General of United States may not deduct from salary of naval officer sum found by him to be due government because of alleged overpayments of allowances regularly made to and received by officer in good faith.

Appeal from Supreme Court of District of Columbia.

Suit by John F. Cox to enjoin J. Raymond McCarl, Comptroller General of the United States, and others, from deducting from plaintiff's salary as naval officer a sum found by named defendant to be due the government. From a decree for plaintiff, defendants appeal. Affirmed.

Peyton Gordon and R. L. Golze, both of Washington, D. C., for appellants.

J. W. Cox and J. W. Price, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia, restraining appellants from deducting from the salary of the appellee, a Commander in the United States Navy, the sum of $1,754.85, which the appellant McCarl, as Comptroller General, conceived to represent improper payments of allowances; appellee insisting that those allowances were properly made. By stipulation of counsel, the case was heard upon the pleadings, "as upon bill and answer."

The first question presented is whether the Comptroller General is clothed with authority to collect, by way of set-off against the salary due an officer of the United States, alleged overpayments made to that officer. There is no question as to the rank and grade of Commander Cox, nor is there any doubt that appropriation was regularly made for his salary.

No statute expressly conferring the authority claimed by the Comptroller General has been brought to our attention, nor have we found any. Neither is it claimed, as we understand the argument, that the Comptroller General has any greater powers in this respect than were formerly possessed by the Comptroller of the Treasury. The position taken is that the determination of the Comptroller General as to the alleged overpayments was prima facie correct, and authorized him, in the exercise of a discretion claimed to reside in him, to withhold the officer's salary until liquidation was made of the amount found due by the Comptroller General, and that appellee's remedy, if aggrieved thereby, is by way of suit in the Court of Claims.

The question now before us has been the subject of judicial consideration and determination. In Smith v. Jackson, 246 U. S. 388, 38 S. Ct. 353, 62 L. Ed. 788, the court states that the salary of the judge of the Canal Zone had been definitely appropriated for, and that, a controversy having arisen "as to whether the auditor of the Canal Zone had the power to refuse to give effect to the act of Congress fixing and appropriating the salary, by withholding such sum as he might think was due from the judge as rent for quarters in property belonging to the United States in the Canal Zone," the Secretary of War submitted to the Attorney General two questions: "First, whether the District Judge was entitled to the same privilege as to quarters in the Canal Zone there enjoyed by other employees of the government; and, second, if not, whether the auditor had authority to deduct from the salary of the judge, before paying it, the sum which he considered due for rent of such quarters;" that the Attorney General, replying to the second inquiry, said: " * * * Without specific authority, no portion of the salary of an officer of the United States may be withheld." The court then says: "While it is apparent that this ruling should have put the subject at rest, obviously the misconception of the auditor as to the nature of his powers prevented that result from being accomplished, and the auditor refused to carry out the act of Congress, and deducted from the salary of the judge, fixed by Congress, not only a charge for rent of quarters, but a sum which he considered due because of the absence of the judge from the Canal Zone during a certain period. The judge thereupon commenced the proceeding which is before us to compel the auditor to perform his plain duty under the law and pay the salary without the deductions."

As a result of this action of the auditor and the consequent bringing of the suit, the expense was occasioned the United States of calling a judge from the United States to hear the case, and Judge Clayton, of the Middle and Northern Districts of Alabama,

proceeded to the Canal Zone to perform that duty. "He did so," says the court, "stating the reasons which controlled him in an elaborate and careful opinion, making perfectly manifest the error of the action of the auditor and his wrong in refusing to observe the ruling of the Attorney General in the premises. 241 F. 747 [154 C. C. A. 449]. From the consequent judgment, directing the payment of salary to be made without the deductions, the auditor prosecuted error from the Circuit Court of Appeals for the Fifth Circuit, in which court the judgment below was affirmed. * * *. The expense of printing a voluminous record has been occasioned and the views of the auditor have been pressed before us in a printed argument of more than 100 pages. We think, however, that we need not follow or discuss that argument, as we are of opinion that it is obvious on the face of the statement of the case that the auditor had no power to refuse to carry out the law, and that any doubt which he might have had should have been subordinated, first, to the ruling of the Attorney General, and, second, beyond all possible question to the judgments of the courts below." \

In the opinion of Judge Clayton, adopted by the Circuit Court of Appeals, the contentions of the auditor, which in substance are repeated here, were elaborately considered and definitely rejected. Counsel for the Comptroller General, however, in his brief and oral argument, contends that the ruling in that case should not be extended "generally to officers and employees of the United States," and that the decision is not controlling here. But such has not been the view of courts called upon to review that decision, nor is it our view. The Attorney General, to whom the question in that case was first submitted, ruled squarely that "no portion of the salary of an officer of the United States may be withheld" without specific authority, and it is apparent from the decision of the Supreme Court that the decision there was that, the salary of the judge having been definitely appropriated for, the auditor was without authority to withhold payment on account of the sum which the auditor conceived to be due the United States from the judge.

In Dillon v. Groos (D. C.) 299 F. 851, a petition for mandamus, the Comptroller General had asserted authority, as here, to set off against an officer's salary a sum conceived to be due on account of overpayments made to that officer in commutation of quarters. The court alluded to various opinions of the Attorney General, cited Smith v. Jackson, and said: "The Smith Case, supra, so exhaustively reasoned, would seem to be conclusive of the question of the authority of accounting officers of the government to check disputed items against salaries fixed by statute." It was ruled that petitioner was entitled to the writ, but the Comptroller General, not satisfied with this decision, pressed his views upon the court in another case, Mare v. Alexander (D. C.) 2 F.(2d) 895, also a petition for mandamus to compel payment to a lieutenant of the Navy, without deductions for alleged indebtedness to the United States claimed by the Comptroller General. Judge Lowell, of the District Court for Massachusetts, in a carefully considered opinion, again rejected the contentions of the Comptroller General and said: "The general situation has been so ably discussed in a luminous opinion by Judge Clayton that it is only necessary to refer to that case. Smith v. Jackson. * * * The precise question here raised has been decided in an able opinion by Judge Sheppard in Dillon v. Groos, * * * whose conclusion I adopt."

Alluding to the contention of the government that the officer had mistaken his legal remedy and should have sued in the Court of Claims, the court added: "The answer to this contention is that the Comptroller General has mistaken his remedy. Instead of recovering for the United States the sum deemed to be due by an imperial fiat—let this be done—without hearing the parties in interest, he should have instituted a suit in a court of justice. U. S. v. Olmsted, 118 F. 433, 55 C. C. A. 249. Doubtless it would be convenient if the matter could be settled by the simple process of ordering the disbursing officer to withhold the lieutenant's salary —in the language of the street, 'docking his pay'; but no such arbitrary power has been invested in the Comptroller General by this new legislation. As Judge Clayton emphatically remarks: 'There cannot be such an autocrat. Our government cannot be reduced to a bureaucracy.'"

But the Comptroller General, still unconvinced, caused an appeal to be taken to the Circuit Court of Appeals, where the decision was affirmed. 5 F.(2d) 964. The court said: "The Comptroller General claims the right to collect, by way of set-off, alleged overpayments previously made these naval lieutenants for support of their dependents. To sustain this claim would manifestly make the Comptroller General judge, jury, and deputy marshal, armed with an execution in behalf of the United States. To withhold

salaries would or might cripple the naval and army services. No such power is vested in any government official. All questions here involved are really determined by the decision of the Supreme Court in Smith v. Jackson, 246 U. S. 388, 38 S. Ct. 353, 62 L. Ed. 788."

It thus appears that the precise question here involved has been decided, adversely to the contentions of the Comptroller General, by two District Courts and the Circuit Court of Appeals for the Second Circuit, and that those decisions are fully supported by the ruling of the Supreme Court of the United States in Smith v. Jackson. We do not consider it necessary, therefore, again to analyze the various statutes and regulations to which our attention has been directed, especially as it is not contended that express authority is to be found therein justifying the action here challenged. It would require very specific provision to convince us that Congress intended to clothe an accounting officer with power to withhold in whole or in part the salary of an officer of the Navy, appropriated for by it, as a set-off against a sum found by that accounting officer to be due the government because of alleged overpayments in allowances regularly made to and received by that officer in good faith. The exercise of such arbitrary power well might affect and seriously impair the efficiency of this branch of the national defense. Indeed, it is not disputed that there are a large number of similar cases now pending. Naval officers are required to go to the far ends of the earth, and many depend upon the salary attached to their office for support of families left behind.

We therefore are fully in accord with the ruling of other courts. As already observed, the Comptroller General does not even contend that his decision is final; but he does maintain that he may, upon his own ex parte finding of indebtedness, cover back into the Treasury a salary regularly appropriated for, and compel the officer involved to await the outcome of a suit in the Court of Claims, while his family may be without means of support. It is obvious that to require an officer to sue the United States, in such circumstances, would impose upon him the burden of proving a negative, or that he was not indebted to the United States, instead of compelling the government to assume the burden rightfully upon it of establishing its contentions by affirmative proof. No such power as is here contended for ever has been conferred upon any official and is entirely inconsistent with our theory of government. It may be added that the persistence with which the authority to exercise this arbitrary power has been urged, in the circumstances, clearly demonstrates the wisdom of Congress in not conferring it.

We therefore rule that, the salary of Commander Cox having been regularly appropriated for, it was the plain ministerial duty of the accounting officers to pay that salary without deductions, and that the decree of the court below was right.

Affirmed, with costs.

Affirmed.