**BURKS v. UNITED STATES (BRAD-LEY, third-party defendant).**

Civ. No. 6766.

United States District Court,
S. D. Texas, Houston Division.

Aug. 6, 1953.

J. Edwin Smith, Houston, Tex., for plaintiff.

Brian S. Odem, U. S. Atty., and John Snodgrass, Asst. U. S. Atty., Houston Tex., for defendant and third-party plaintiff.

F. Warren Hicks, Houston, Tex., for third-party defendant.

CONNALLY, District Judge.

Proceeding under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2678, 2680, plaintiff seeks recovery of the United States for the personal injuries which he received as result of a collision between the automobile in which he was riding as a passenger and a government vehicle. The vehicle in which plaintiff was riding was proceeding along a well traveled highway, in or near the City of Livingston in Polk County, Texas, when it was struck near the right front door by the government vehicle which entered from a lateral road. The government driver was negligent in failing to keep a proper lookout and in failing to heed or obey two highway signs,

one of which warned of the imminent intersection with the through highway, while the other was the conventional "stop" sign. While such conduct presents a rather flagrant case of negligence, it cannot be characterized as gross. Such negligence was a proximate cause of the collision and of the plaintiff's injuries. The government driver was acting in the course and scope of his employment, and hence it follows that the plaintiff is entitled to recover. His damages are fixed at $2,500.

The Government, as third-party plaintiff, has impleaded and seeks recovery over against James A. Bradley, the driver of its vehicle. Such third-party defendant is, and was at the time of the accident, a civilian employee of the Corps of Engineers, Department of the Army. While he had been directed by his superiors to make the trip in question, the route which he followed, and the manner in which he drove the vehicle, were matters entirely within his own discretion and control. He denies responsibility to the Government on two theories. First, in general, he contends that there is no liability of an employee to indemnify the Government where the initial liability is imposed by virtue of the Tort Claims Act; and, second, he contends specifically that he, as a civilian employee of the Department of the Army, is exempt from any such liability which may exist under the terms of Army Regulation 25–220 (Sept. 28, 1949). In so far as this third-party action is concerned, these facts apparently present a case of first impression. Neither a diligent search by counsel for both parties, nor my own efforts, has been productive of any decision directly in point.

The Act is silent on the right of the Government to indemnity under these circumstances. Section 2676 merely provides that where the claimant goes against the Government, a judgment in that action bars his further pursuit of the employee. It does not touch the question of the Government's right, after it is cast in damages, to pursue its negligent servant.[1] At common law, the principle that an employer who, without personal fault, is held liable to a third person solely under the doctrine of respondeat superior may recover indemnity from his erring servant, has long been established, and is, I think, universally recognized today.[2] It is based on the equitable principle that the person actually at fault ultimately should bear the loss resulting from his wrong, and would be unjustly enriched by the master's being compelled to satisfy the servant's obligation unless the master be entitled to indemnity from the wrongdoer.

There can be no doubt that the governmental employee here would be liable to the claimant under the present facts had that claim been asserted. It has long been established that governmental employees are personally liable for their own torts to third persons, committed in the course of employment. Such employees are still citizens and their employment by the Government is no cloak of immunity. The same rule of personal liability prevails as to members of the Armed Forces.[3]

1. To the same effect are several of the cases cited by third-party defendant; as, Lauterbach v. U. S., D.C., 95 F.Supp. 479; Prechtl v. U. S., D.C., 84 F.Supp. 889.

2. Restatement "Agency" p. 914; 42 C.J. S., Indemnity, § 21, p. 597; 50 Amer. Juris. 707; Prosser on Torts 1114.

3. Little v. Barreme, 2 Cranch 170, 6 U.S. 170, 2 L.Ed. 243; Mitchell v. Harmony, 13 How. 115, 54 U.S. 115, 14 L.Ed. 75; Bates v. Clark, 95 U.S. 204, 24 L.Ed. 471; 6 C.J.S., Army and Navy, § 37, p. 419; 36 Amer.Juris. 265.

Personal liability of members of the Armed Forces is subject to certain well recognized exceptions not here pertinent, as obedience to apparently lawful orders, the exigencies of war, etc. This personal liability has led to the enactment of a number of private relief bills by the Congress, whereby the officer affected has been repaid his loss by governmental appropriation. For example, see Private Law 820, 82nd Congress, Senate Report 2025, 2nd Session.

██ I find nothing in the Act which indicates that liability of the Government now is to be the claimant's exclusive remedy, or that the claimant is deprived of a cause of action against the governmental employee which existed prior to the Act, if he should elect to go that route.[4] The only novel feature of this fact situation is that the Government for the first time is cast in the role of the employer who seeks this relief. Where, by statute, it is held to the liability of a private employer, §§ 1346(b), 2674, I see no reason why it may not enjoy one of the concomitant rights which flows from such a liability. This view is shared by eminent text authority,[5] and supported by logic and reason.

Third-party defendant argues that U. S. v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, compels a contrary result. There the Supreme Court refused to recognize in the United States a cause of action against a negligent third party for injury to a soldier. The damage which the United States sustained arose by reason of the continuation of the soldier's pay during his incapacity, and the medical and hospital expense which the Government bore on his behalf. There was no statutory or case authority in support of such alleged cause of action, though the proponents argued that the government-soldier relation was similar to that of master-servant, husband-wife, or parent and child; and that by analogy, a cause of action in favor of the Government for the loss of services and incidental expense should be recognized. The Court there held that the relation of the Government to members of its Armed Forces was peculiarly federal in character, and of necessity uniform in application. It did not in any sense depend upon the vagaries of state law; but that the government-soldier relation was governed and controlled by the "federal common law", or what remained of it after Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. As the problem was one which had confronted the Government since it first levied and supported an army, and as the Congress, though obviously aware of the question, had never created such cause of action by statute, the Court refused to recognize one on analogy to common law principles. But the situation is different here. It is not necessary to search for analogy because, as I have undertaken to show, there is abundant authority sustaining the cause of action under the very relationship here involved. Where the Government, by statute, measures its primary liability by common law standards, as though it were a private employer, it does not require "judicial legislation" to recognize and enforce other common law incidents resulting from that relationship. Where the United States has found itself in what I may refer to as other common law relationships, the courts, while recognizing a need for uniformity in the dealings of the United States with its citizens, have not been reluctant to draw on and apply well established common law principles, as part of the federal common law system.[6]

4. As well he might under some circumstances; for example, as when there is serious doubt as to course of employment.

5. 3 Moore's Fed.Practice, § 14.29, p. 514: "We believe that the right of the United States to indemnity from its negligent employee is a proper case. The common law has long recognized the right of the master to be indemnified by the servant and it is no novelty to recognize that right when the United States is claiming against its employee".

And the author of "The Federal Tort Claims Act" (56 Yale Law Journal 534, at 560, footnote 177), without citation of pertinent authority, rather boldly states: "The Government clearly would have a valid claim against the employee".

6. As examples, see Clearfield Trust Co. v. U. S., 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838, where the United States, as maker of a check, is allowed to recover from one who honored it on a forged endorsement; and Wisconsin Central R. R. v. U. S., 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399, holding that the Government may recover money paid under mistake, and other instances there cited.

The Army Regulations of the "25 Series" deal in general with the functions and duties of the office of the Judge Advocate General's Department. Beginning with AR 25–20–1, the regulations pertain to the duties of the office of the Judge Advocate General in investigating, processing, and settling various types of claims.[7]

AR 25–220 (Sept. 28, 1949) is entitled "Claims and Litigation", with the subtitle "Claims in favor of the United States for Damage to or Loss or Destruction of Government Property". The term "claim" is there defined as "the right of the United States to demand from *a defendant* payment *for damage to or loss or destruction of Government property*" (emphasis added throughout) and "Defendant" is defined as "any individual * * *, without regard to the degree of negligence involved; *provided however*, that members of the Armed Forces of the United States and *civilian employees of the United States acting within the scope of their employment shall be deemed defendants only when gross negligence is involved*". So far, it is clear that the regulation only pertains to claims for the loss or destruction of government property. However, Paragraph 2 thereof, entitled "Scope", provides as follows:

"Included within the provisions of these regulations are claims in excess of $50 * * *, for—

"(a) Damage to or loss or destruction of Government property.

"(b) *Expense or loss* to the Government, incurred in other cases, *arising from negligence* or wrongful act, *where the Government's obligation is fixed by* common law, *Federal* or State *statute*, convention, treaty, or agreement."

Thus, it is clear that if the term "claim" is afforded the definition ascribed to it in Paragraph 1, the regulation would not encompass more than demands for the damage or loss of government property. However, if any meaning whatsoever is ascribed to the plain language of 2(b), it would seem that the facts of the present case would fall within its terms. Clearly this is an instance of an expense or loss to the Government, arising from negligence, where the Government's obligation is fixed by federal statute. The regulation then provides for the investigation of such claims and processing thereof as provided in earlier regulations. Third-party defendant contends that the regulation applies; and as he was not guilty of gross negligence, the regulation affords a complete defense.

■■ In view of the ambiguity hereinabove pointed out, inquiry was made of the office of the Judge Advocate General for the interpretation which had been placed by that office on the regulation in question. I am advised by the office of the Judge Advocate General, Department of the Army, under date of July 15, 1953, that that office does not consider the quoted regulation applicable to a case of this character. While, of course, this interpretation is not controlling, in my opinion it is entitled to considerable weight. On mature consideration, I have concluded, however, that without regard to whether the interpretation of the subject regulation would bring the terms of the present case within or without its scope, it would not afford the third-party defendant an answer to the Government's case against him. The reason for this result, as I see it, lies in the fact that the regulation in question does not purport to do more than provide for the disposition of certain types of claims by administrative means.[8] It does not undertake categori-

---

7. Including claims of third persons against military personnel or the Government, as for damage to or destruction of property or personal injuries; claims of military personnel against the Government, as for the loss of personal effects due to change of station; and claims of the Government against military personnel and third persons for loss or damage to government property, etc.

8. Where liability of federal employees is administratively determined, in some in-

**342**

cally to set out all of the legal rights and obligations which arise from the master-servant relationship which exists between the Government and the third-party defendant. It is promulgated with other army regulations, under the authority of 5 U.S.C.A. § 22, reading as follows:

> "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it";

and appears, with similar regulations, in the Code of Federal Regulations (Title 32, Ch. 5, Dept. of the Army, 537–3, et seq., 1951).

In conformity with such regulations, an investigation was made of the accident in question here, and the conclusion reached by the Board of Officers considering the matter "that the Government driver was negligent in failing to observe the character of the intersection from the existing caution and highway signs; but that his fault does not constitute gross negligence so as to warrant

imposition of pecuniary responsibility under the provisions of AR 25–220". Assuming the application of the regulation in question, the most that can be said for the position of third-party defendant, as I see it, is that no administrative means are provided whereby this obligation may be collected by stoppage of his pay; or perhaps one might go further and say that such regulation established a policy on the part of the Government not to assert such claim. But the fact that no provision is made for administrative collection does not negative the existence of a legal obligation; and where, through the properly constituted authority (The Attorney General here), the United States asserts a cause of action in a court of law, it no longer is a question of what the policy of the Government is, or should be, but becomes one of the existence or nonexistence of the cause of action asserted.

There are many cases in the books showing that administrative procedures of the type here in question are not exclusive, nor administrative determinations final, where the parties have resort to the courts to determine their legal rights; and holding further that in case of conflict, such executive regulations must yield.[9] Undoubtedly, from past

---

stances a stoppage of pay is authorized to effect collection (See AR 25–80, May 29, 1951). In other cases, the claim may be collected in full or settled through administrative channels (AR 25–220–1, Sept. 28, 1949).

9. Where stoppage of an officer's pay has been ordered to recoup an obligation which he allegedly owed the Government, he may resort to the courts, Alexander v. Mare, 1 Cir., 5 F.2d 964, and cases there cited; McCarl v. Cox, 56 App.D.C. 27, 8 F.2d 669.

And see McCarl v. Pence, 57 App.D.C. 159, 18 F.2d 809, holding invalid a series of army regulations which sanctioned a practice for the collection of monies due the Government, which was condemned by opinions of The Attorney General and by the courts.

And see Meads v. U. S., 6 Cir., 81 F. 684, 692, holding that the provisions of regulations promulgated by the Secretary of the Interior, while in a limited sense

having the effect of law, could not enlarge or restrict the liability of an officer to the Government, or the sureties on his bond. In discussing the effect of the regulation in question, the Court stated:

"We may now return to consider for a moment the real character and effect of rule 53 promulgated by an executive department of the general government, and we are very clear that rule 53 was an administrative regulation or order intended to prescribe suitable business methods of doing the work required of officers in the department. In its effect it raises a question of discipline and procedure between the head of the department and the subordinate officers or agents, and, while disobedience of the regulation might furnish sufficient and just ground for discharging an employé, it was not competent by such regulation as this to enlarge or restrict the rights or obligations growing out of the execu-

history it may be assumed that the instances in which the Government will see fit to assert a cause of action of the kind here in question will be rare, and probably that is as it should be. But here it is seeking the relief to which, in my opinion, it is entitled at law.

Judgment will go for the plaintiff against the United States in the amount of $2,500; and in favor of the United States, as third-party plaintiff, against third-party defendant in a like amount.

The foregoing is adopted as Findings of Fact and Conclusions of Law. Clerk will notify counsel.

tion of the bond in question as determined by law."

Wisconsin Central R. R. v. U. S., supra, cites many instances illustrating the principle that executive or administrative

decisions are not binding on the courts.

In case of inconsistency between a Navy regulation and statute, see Frucht v. U. S., 49 Ct.Cl. 570.