UNITED STATES of America,
Plaintiff-Appellee,

v.

Eugene A. TAFOYA,
Defendant-Appellant.

No. 84–1931.

United States Court of Appeals,
Fifth Circuit.

Oct. 22, 1986.

Eugene A. Tafoya, pro se.

Daniel E. Fromstein, Washington, D.C., for the U.S.

Before CLARK, Chief Judge, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

This appeal presents a challenge to a district court order withholding twenty-five percent of Eugene A. Tafoya's army retirement pay pursuant to Public Law 97–276, section 124 (section 124).[1] We reverse.

I.

After his indictment on criminal tax charges Tafoya received appointed counsel to represent him, as provided for in the Criminal Justice Act, 18 U.S.C. § 3006A(b). After judgment on a guilty verdict was entered the United States filed a motion seeking an order from the district court requiring "Eugene A. Tafoya ... to pay or reimburse the United States for any and all funds paid or to be paid to [Tafoya or his] counsel, as authorized by 18 U.S.C. § 3006A(c) and (f)."[2] In an order dated October 5, 1983 (the October 5 order), the

1. This provision is codified as 5 U.S.C. § 5514 note.

2. In pertinent part section 3006A(c) provides:
   If at any time after the appointment of counsel the United States magistrate or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may ... authorize payment as provided in subsection (f), as the interests of justice may dictate.
   Section 3006A(f) provides in part:
   Whenever the United States magistrate or the court finds that funds are available

district court found that Tafoya's army retirement pay was "available for payment on behalf of Eugene Tafoya ... and that the interests of justice support this use of these funds." Based on these findings and on a finding that Tafoya and his family had other means of support, the district court directed the garnishment of one hundred percent of Tafoya's retirement pay until Tafoya had repaid attorney's fees amounting to $7,099.94.[3] At the time this order was issued, Tafoya was retired as an enlisted soldier from the United States Army.

Tafoya appealed from the October 5 order (Appeal No. 83–1799), an appeal which we dismissed on July 31, 1984, for failure to prosecute. *See* 5th Cir.R. 42.3. Following this dismissal the government filed a motion in district court requesting an amendment of the October 5 order which would reduce Tafoya's army pension garnishment from one hundred to twenty-five percent. This motion was based on a letter from the army to government counsel stating that section 124 limited collection to twenty-five percent of a debtor's current pay.[4] The instant appeal arises from the district court's August 17, 1984, order (the August 17 order) granting the government's motion.

Tafoya urges three grounds of error on appeal. First, he maintains that his family is impoverished and, thus, that no funds are "available" for payment of his attorney's fees within the meaning of 18 U.S.C. § 3006A(f). Second, Tafoya argues that 18 U.S.C. § 3006A(d)(2) limits the attorney's fees recoverable by the government to $2,000. These issues are not pertinent to the August 17 order, which is the subject of this appeal. They relate instead to the October 5 order earlier appealed from which we dismissed for failure to prosecute. We therefore express no opinion on the merits of these points.

■ Tafoya's third argument is that the district court had no authority under section 124 to garnish twenty-five percent of his retirement pay. We find this position to be meritorious.

## II.

■ The right of setoff is "inherent in the United States Government," 26 Comp. Gen. 907, 908, and exists independent of any statutory grant of authority to the executive branch. *See Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 10 L.Ed. 759 (1841); *McKnight v. United States*, 13 Ct.Cl. 292, 306 (1877), *aff'd*, 98 U.S. (8 Otto) 179, 25 L.Ed. 115 (1879). The scope of this common law right is broad. Historically, it has been exercised against anyone who has a "claim" against the government, including unpaid government contractors, *e.g. United States v. Munsey Trust Co.*, 332

for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid ... to the court for deposit in the Treasury as a reimbursement to the appropriation....

3. The government states in its brief that although the October 5 order authorized garnishment of one hundred percent only twenty-five percent was actually collected.

4. Section 124 provides as follows:
   Notwithstanding any other provision of this joint resolution [Pub.L. 97–276], in the case of any employee of the Federal Government who is indebted to the United States, as determined by a court of the United States in an action or suit brought against such employee by the United States, the amount of the indebtedness may be collected in monthly installments, or at officially established regular pay period intervals, be [sic] deduction in reasonable amounts from the current pay account of the individual. The deductions may be made only from basic pay, special pay, incentive pay, or, in the case of an individual not entitled to basic pay, other authorized pay. Collection shall be made over a period not greater than the anticipated period of employment. The amount deducted for any period may not exceed one-fourth of the pay from which the deduction is made, unless the deduction of a greater amount is necessary to make the collection within the period of anticipated employment. If the individual retires or resigns, or if his employment otherwise ends, before collection of the amount of the indebtedness is completed, deduction shall be made from later payments of any nature due to the individual from the United States Treasury.

U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), persons to whom the government owes retirement benefits, *e.g.* 16 Comp. Gen. 161; *id.* 1017; 17 *id.* 391; 19 *id.* 721; 21 *id.* 1000; *Boerner v. United States,* 30 F.Supp. 635; *aff'd,* 117 F.2d 387 (2d Cir. 1941), and employees to whom final salary payments or lump sum payments are due, *O'Leary v. United States,* 82 Ct.Cl. 305 (1936); 24 Comp.Gen. 522.[5]

Based on a somewhat amorphous opinion by the Supreme Court, *Smith v. Jackson,* 246 U.S. 388, 38 S.Ct. 353, 62 L.Ed. 788 (1918) (offset of a federal judge's salary disallowed) and on two subsequent opinions by the District of Columbia Circuit, *McCarl v. Cox,* 8 F.2d 669 (D.C.Cir.1925) (offset of military officer's active pay disallowed despite longstanding practice by War Department of offsetting salaries of indebted officers), and *McCarl v. Pence,* 18 F.2d 809 (D.C.Cir.1927) (same), none of which addressed the government's power under the common law to offset its debts, the Comptroller General has given limited effect to the government's broad common law rights of offset and has refrained from offsetting "the current salary payments to officers and employees still in the Federal service." 26 Comp.Gen. 907, 908. The peculiar facts of *Smith v. Jackson,* and constitutional impediments which bar manipulating a federal judge's salary, made the *Jackson* case a dubious basis for the drastic changes in government practices mandated by the District of Columbia Circuit and the Comptroller General; nevertheless, the opinions of the District of Columbia Circuit and the Comptroller General are the sole authority on the issue at hand and thus the sole criterion by which we may judge Congress' intent in interpreting federal debt collection statutes.[6]

To recapitulate, the interpretive background against which we assess Congress' aims include two principles which have been developed by the Comptroller General out of *Gratiot* and *Jackson.* The first is that moneys owed by the United States to its debtor, including retirement pay, may be offset pursuant to the government's inherent powers under the common law. The second is that "current pay" may not be offset absent specific statutory authority. At this point in the analysis the outcome of this appeal appears to be foreordained: Tafoya's retirement pay is subject to offset. By some quirk of history, however, Tafoya's retirement pay is actually not "retirement pay"; it is, instead, "current pay" designed in part to compensate Tafoya for his continuing readiness to return to duty should his country have need to call upon him. 51 Comp.Gen. 303; *see also McCarty v. McCarty,* 453 U.S. 210, 222–23, 101 S.Ct. 2728, 2736, 69 L.Ed.2d 589 (1981).[7]

■ Thus, under *Jackson* and its progeny the government may not offset Tafoya's pay unless it demonstrates that its actions are grounded in a specific grant of authori-

---

**5.** The common law right of offset also finds expression in provisions of the United States Code:

31 U.S.C. § 3728(a):
The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.

38 U.S.C. § 3101(a) [in pertinent part]:
Payments of benefits due or to become due under any law administered by the Veterans Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws ...

**6.** In at least one instance Congress explicitly referred to a decision of the Comptroller General as the basis for its belief that there was no inherent governmental authority to offset current pay. S.Rep. No. 378, 97th Cong., 2d Sess. 11, *reprinted in* 1982 U.S. Code Cong. & Adm.News, pp. 3377, 3387.

**7.** Although the holding of *McCarty* was superseded by statute, the court's discussion regarding the classification of military retired pay as current pay remains viable.

ty by Congress. The government has attempted to meet its burden by referring this court to section 124 which provides a twenty-five percent right of offset against the "current pay account" of "any employee of the Federal Government" who has been adjudged by a court of law to be indebted to the United States. The difficulty with applying section 124 is that it relates only to "employees" of the government and not specifically to members of the armed forces. Normally, this would not concern us for Tafoya was clearly employed by the federal government as well as by the United States Army. In its historical context, however, section 124's absent reference to members of the armed forces takes on a special significance, which we now address.

Section 124 was enacted in October 1982. Prior to 1982 Congress enacted Public Law 89–554, codified as 5 U.S.C. § 5514 (former section 5514), which permitted the offset of erroneous overpayments to an "employee, a member of the armed forces, or a Reserve of the armed forces." On October 25, 1982, just 23 days after the passage of section 124, Congress enacted the Debt Collection Act of 1982, Public Law 97–365, amending former section 5514. This statute, like its predecessor, expressly included members of the armed forces within its reach. We are unable to conclude, given the proximity of these dates on which section 124 and amended section 5514 were enacted that the difference in the two statute's language is a mere fortuity. Our

doubts in this regard, moreover, ripen into conviction when we consider the definition of "employee" set forth in 5 U.S.C. § 5102. Section 5102(a)(2) provides that " 'employee' means an individual employed in or under an agency." Referring to section 5102(a)(1)(viii) we see that "agency" does not include the Department of Defense. Hence, under chapter 51 "employee" does not include a soldier employed by the Department of Defense. By its own terms, section 5102 applies only to chapter 51. Section 124 is contained in chapter 55 and thus is not controlled by section 5102. Though not controlling, we nevertheless view section 5102 as strong evidence that Congress did not mean "serviceman" when they specified "employee." This in addition to the legislative histories of sections 124 and 5514 convince us that Tafoya's military retirement pay does not come within the purview of section 124.

Because section 124 does not apply to members of the armed services, it does not provide the government with the authority to offset Tafoya's pay. The government must seek relief instead under section 5514 [8] which specifically relates to members of the armed forces. The government, apparently having failed to follow any of the procedural steps outlined in section 5514 in this appeal, has disavowed any intention of pursuing any remedies it may have against Tafoya under this section; we therefore do not address whether it may offset Tafoya's retirement pay pursuant to section 5514.[9]

8. Section 5514(a)(1) provides:

When the head of an agency or his designee determines that an employee, member of the Armed Forces or Reserve of the Armed Forces, is indebted to the United States for debts to which the United States is entitled to be repaid at the time of the determination by the head of an agency or his designee the amount of indebtedness may be collected in monthly installments, or at officially established pay intervals, by deduction from the current pay account of the individual. The deductions may be made from basic pay, special pay, incentive pay, retired pay, retainer pay, or, in the case of an individual not entitled to basic pay, other authorized pay. The amount deducted for any period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted upon the written consent of the individual involved. If the individual retires or resigns, or if his employment or period of active duty otherwise ends, before collection of the amount of the indebtedness is completed, deduction shall be made from subsequent payments of any nature to the individual from the agency concerned.

9. Were we to decide this question, we would be required to determine to what extent the procedures outlined in section 5514 may be waived when the debtor has already received due process in our courts. However,

Accordingly, we REVERSE the August 17 order of the district court, RENDER judgment for Tafoya with respect to his claim for declaratory relief, and REMAND to the district court for proceedings to determine whether the injunctive relief sought by Tafoya would be appropriate in light of this opinion.

this determination must be postponed to another day.