No. 46,045

Missouri Pacific Railroad Company, *Appellant*, v. James T. Mc-Donald, Director of Revenue of the State of Kansas, *Appellee.*

(486 P. 2d 1347)

Opinion filed July 16, 1971.

*Ralph M. Hope*, of Lilleston, Spradling, Gott, Stallwitz and Hope, of Wichita, argued the cause and was on the briefs for the appellant.

*O. F. Baldwin*, of Topeka, argued the cause, and *William L. Harris, Jr.*, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is an appeal from a judgment upholding a state board of tax appeals order denying refund of state income taxes paid by a railroad company for the years 1962 through 1965.

The issues on appeal are whether certain statutes providing for the method of income tax computation are constitutionally invalid as an unlawful delegation of legislative power or because they are discriminatory and deny equal protection of the law.

Facts in the proceeding were stipulated in the trial court. We summarize them:

Appellant Missouri Pacific Railroad Company was in 1937 and at all times since, and is now, subject to the jurisdiction and regulation of the Interstate Commerce Commission which is authorized by federal law to require appellant to make annual, periodical or

special reports to it and to prescribe a uniform system of accounts applicable to any class of carrier subject to its jurisdiction and, pursuant thereto, the commission has promulgated regulations prescribing a uniform or standard system of accounts to be kept by all Class I carriers, to which class appellant belongs. In 1937 the ICC had prescribed a standard classification of accounting for rate-making and other regulatory purposes and appellant was required to and did keep its records according to such classification. The ICC has the authority to amend or change its standard classification of accounts and it has done so from time to time since 1937; such amendments or changes have been published by the ICC but the appellee director of revenue of the state of Kansas has not been consulted or notified with respect thereto prior to their issuance or publication; the standard classification of accounts and subsequent changes and amendments have not at any time been set out and incorporated in any statute enacted by the Kansas legislature; upon the making of such amendments and changes from time to time in the standard classification of accounts and as a result thereof, the net taxable income of railroads determined under the applicable Kansas statutes was altered; such amendments and changes in the ICC's standard classification of accounts have been recognized and enforced by the state director of revenue and his predecessors in determining appellant's net income taxable in Kansas since 1937, the effect of which is that depreciation is taken into account on the straight-line method and appellant is not permitted to use any of the forms of accelerated depreciation or the guidelines issued by the federal internal revenue service which it uses in its federal income tax returns and is permitted to use in many other states and which many other corporations doing business in Kansas are permitted to use in determining net income taxable in this state. The ICC made no change in the standard classification of accounting during the tax years in question.

Appellant timely filed its state income returns with appellee director for the year 1962 under the provisions of G. S. 1961 Supp. 79-3218 and for the years 1963, 1964 and 1965 under K. S. A. 79-3290 (both statutes being identical for present purposes) and paid the amount of tax due thereunder, totaling $129,012.30. Appellant used the same method in computing its net taxable income in Kansas for the years 1937 through 1961.

Prior to the expiration of four years from the date of filing each of

the returns for the years 1962 through 1965 appellant filed with appellee its amended returns for those years, with its net taxable income computed in accordance with the provisions of K. S. A. 79-3279 (and its predecessor statute), incorporating the general three-factor method provided thereby; such amended returns showed no tax liability for the years in question, and at the same time of their filing appellant filed an application for refund in the amount of $129,012.30, pursuant to K. S. A. 79-3230. The parties concede the mathematical correctness of both sets of tax returns filed by appellant, and that the amount of tax to be paid depends on the constitutionality of the statutes challenged herein. At no time during the period from 1937 to 1965 did appellant petition appellee for a change in the method of allocation of appellant's income under the provisions of either G. S. 1949, 79-3219 or its successor statute K. S. A. 79-3291.

Appellant's application for refund was heard and denied by appellee and then in turn, upon appeal, by both the state board of tax appeals and the district court of Shawnee county. This appeal ensued.

Appellant's principal contention is that K. S. A. 79-3290 under which it paid its 1963, 1964 and 1965 taxes, and that portion of G. S. 1961 Supp. 79-3218 containing the same provisions as K. S. A. 79-3290, under which it paid its 1962 taxes, are unconstitutional as an unlawful delegation of legislative power in violation of article 2, section 1, of the Kansas constitution. This latter proviso states:

"The legislative power of this state shall be vested in a house of representatives and senate."

Our income tax law was first enacted in 1933. In 1937 it was amended to include a new section which contained with respect to corporations doing business in Kansas both (a) a general method of determining corporate net income taxable in Kansas which was applicable to corporations not classified as public utilities and (b) a separate method of ascertaining such net income of corporations engaged in operating a railroad, telephone or telegraph business, or other forms of public service, when such corporations were required by the Interstate Commerce Commission to keep records according to its standard classification of accounting. These provisions were at various times reenacted and eventually that which is described as (a) above became K. S. A. 79-3279, and (b) became K. S. A. 79-3290.

K. S. A. 79-3279 provides as follows:

"All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

The provision has come to be known as the three-factor method and is the one appellant contends should be applicable to it.

K. S. A. 79-3290, identical in effect to the latter part of G. S. 1961 Supp. 79-3218, and under both of which appellant paid the taxes in question here, provides in pertinent part:

"The basis of ascertaining the net income of every corporation or business entity as defined by subsection (f) of section 1 [public utilities], when such business entity is required by the interstate commerce commission or federal power commission to keep records according to its standard classification of accounting, shall be the 'net revenue from operations' of such corporation as shown by the records, kept in accordance with that classification of accounts, when their business is wholly within this state, and when their business is part within and in part without the state, their net income within this state shall be ascertained by taking their gross 'operating revenues' within this state, including in their gross 'operating revenues' within this state the equal mileage proportion within this state of their interstate business and deducting from their gross 'operating revenues' the proportion average of 'operating expenses' or 'operating ratio' for their whole business as shown by the records kept in accordance with the standard classification of accounts: . . ."

This lawsuit presents the first constitutional challenge to 79-3290 and its predecessors since their enactment.

Essentially, appellant contends K. S. A. 79-3290 delegates to the Interstate Commerce Commission legislative power to provide from time to time, at its discretion and pleasure for rate-making and other regulatory purposes, the formula for use by appellee director of revenue in determining the net income of railroads as a basis for ascertaining the amount of state income taxes. It argues the statute adopts as a formula for tax purposes an accounting system evolved by an outside agency for an entirely different purpose, which system that agency can change at will, and in effect has resulted in the prospective adoption of federal regulations for state taxation purposes. (Noteworthy at this point is the fact this litigation does not involve consideration of the amendment in 1966 of article 11, section 11, of the Kansas constitution authorizing adoption, prospectively, of federal income tax laws).

The question raised is not free from difficulty. Appellant relies heavily on the frequently cited *State v. Crawford,* 104 Kan. 141, 177 Pac. 360, and other familiar cases of like import. In *Crawford,* a criminal prosecution, this court considered a fire-prevention statute

which provided that all wiring should be in accordance with the "national electrical code", which code consisted of electrical installation rules made by an unofficial organization of private persons. The rules were revised every two years. This court held the statute invalid as an unlawful delegation of legislative power, saying:

"In our commonwealth the power to make, amend, alter and repeal the laws is vested in the legislature. That body may not abdicate its functions nor delegate its powers to any other body, however learned, wise and farsighted the latter may be. This principle of our constitution and of our public policy is fundamental." (p. 143.)

A prime consideration in our cases in determining if the power delegated by specific legislation is proper is whether the power given is actually legislative or merely administrative. In *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865, a case involving legislation conferring upon school reorganization committees the power to establish school districts, it was stated:

"If the powers sought to be delegated are legislative in character, as distinguished from administrative, ordinarily they cannot be delegated unless their delegation is authorized by some express provision of the constitution or the authorization arises by reason of clear implication therefrom. Such a result follows from the doctrine of separation of the powers of government. The functions of the legislature must be exercised by it alone and cannot be delegated unless there is constitutional sanction therefor." (pp. 302-303.)

The court further held that even when the authority granted may be considered administrative it is not valid unless reasonably clear standards are fixed for the exercise of such authority (Syl. ¶ 4) and went on to say:

"Standards are difficult to define because of the variable nature thereof. They have been referred to as conditions, restrictions, limitations, yardsticks, guides, rules, broad outlines and similar synonymous expressions hereinafter set forth. It has been held that in the creation of administrative tribunals the power given them must be 'canalized' so that the exercise of the delegated power must be restrained by banks in a definitely defined channel. Ordinarily the standards must be sufficiently fixed and determined so that in considering whether a section of a statute is complete or incomplete the test is whether the provision is sufficiently definite and certain to enable one reading it to know his rights, obligations and limitations thereunder. For present purposes it may be said that a standard is a definite plan or pattern into which the essential facts must be found to fit before specified action is authorized. We can be certain of one test—a legislative fiat which provides that an administrative agency shall consider the elements which might affect legislation and then act as it sees fit—does not fix a standard." (p. 309.)

The subject was more recently elaborated in *Sutherland v. Fergu-*

*son,* 194 Kan. 35, 397 P. 2d 335, in which the Basic Science Act and the Healing Arts Act were held not to constitute an unlawful delegation of legislative power. This court stated:

"Plaintiffs concede that in this day and age, with governmental functions becoming more and more complex, more and more powers are of necessity being delegated to administrative officials, and that the advisability of vesting more power in boards and agencies is solely a question for legislative decision. . . . As was said in *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 440, 296 P. 2d 656, the legislature may enact general provisions but leave to those who are to act certain discretion in 'filling in the details' so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority. On the same subject see *State, ex rel., v. Fadely,* 180 Kan. 652, (Syl. 7), 308 P. 2d 537." (pp. 37-38.)

The import of this line of decisions is that legislative power is not unlawfully delegated by giving discretionary functions and authority to the agency which is to carry a statute into effect so long as the statute lays down basic standards and reasonably definite policy for its administration.

In *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1, a railroad based its first return under the then newly-enacted state income tax law on its accounts kept upon a mileage basis in accordance with the regulations of the ICC. In the ensuing litigation the principal question was the proper method of allocating income of the taxpayer. This court held:

"The determination of proper methods of allocating income of such a corporation and of the amount of tax due from the corporation is an administrative duty cast upon the state tax commission and is to be performed by it." (Syl. ¶ 3.)

In prescribing a particular system of accounting to be used in determining net income, as the legislature did subsequent to the effort of the Union Pacific Railroad to employ that same system in the foregoing case, we do not believe the legislature unconstitutionally delegated its authority in choosing the standard which it did in its enactment of K. S. A. 79-3290 and its predecessors. It has long been recognized that accounting for railroads necessarily differs in important respects from that of general commercial accounting (Lasser, Handbook of Accounting Methods, 1943, pp. 1040-1056). The problem is compounded by the interchange of equipment between railroads, the interstate character of the operation and the difficulty of relating revenue to mileage within a state, and is one where uniformity is highly desirable. The legislature chose the standard classification of accounts used by the ICC as the basic

system of accounting to be used in income tax reporting. It might have designated some other method but the need and wisdom of its action is strictly a matter for legislative concern. A standard classification of accounting prescribed by the federal agency having nationwide regulatory and rate-making control over railroads is a well recognized and established system of accounting. Although not an immutable thing, neither is it something subject to whimsy or arbitrary change. The fact appears to be that, despite some alteration, the major accounting principles of the standard classification of accounts are substantially the same today as they were in 1937. They are in accord with accepted accounting practice. As we understand it the prescribed classification of accounts provides generally for the showing of income, operating expenses and investment in road and equipment, peculiarly adapted to the nature of the operation. There is no contention that use of the system does not reflect reasonably accurate results of the business. The obvious burr under the saddle is that another federal agency, the internal revenue service, has since recognized a more favorable method of depreciation for tax purposes for a taxpayer in appellant's position than that employed by the ICC. But this adventitious development scarcely operates to transform K. S. A. 79-3290 into an abdication of legislative function.

Threaded throughout appellant's argument is the statement that the ICC's system of accounting is designed for rate-making purposes, not for the determination of net income, and therefore should not be used. Be that as it may, rate-making is an integral part of the process wherein net income is ultimately derived and we see no impediment to the use of the challenged system upon that score. In any event such an argument should be addressed to the legislature. Actually all the legislature has done is to say that a taxpayer which keeps its records according to the standard classification of accounting prescribed by the ICC shall use those same records in determining its net operating revenue.

Moreover, the entire legislative scheme for determining taxable net income of those regulated by the ICC places considerable discretion in the director of revenue, whose duty it is, under K. S. A. 79-3233, to administer the income tax act. For example, K. S. A. 79-3291, as did its predecessor G. S. 1949, 79-3219, provides that, with exceptions not here material, if the allocation and apportionment provisions of 79-3290 do not fairly represent the extent of the

taxpayer's business activity in this state, the taxpayer may petition for or the director of revenue may require in respect to all or any part of taxpayer's business activity, if reasonable, the employment of any other method to effectuate an equitable allocation and apportionment of taxpayer's income. Likewise, a portion of K. S. A. 79-3290 which we have not quoted provides if the director shall find, with respect to any particular company doing an interstate transportation business, that its accounting records are not kept so as to reflect with exact accuracy the division of revenue by state lines as to each transaction involving interstate revenue, the director may adopt such regulations, based upon averages, as will approximate with reasonable accuracy the proportion of interstate revenue actually earned upon lines in this state. And K. S. A. 1965 Supp. 79-3209(A), in effect when appellant filed its amended returns but since repealed, provided that net income should be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed by the taxpayer but if the method employed did not clearly reflect the income, the computation should be made in accordance with such method as in the opinion of the director clearly reflected the income. K. S. A. 79-3290 is surrounded with safeguards. Not only is review by the board of tax appeals and judicial review available, potential situations of hardship are recognized with provision made for redress therein by the director upon complaint.

We conclude, and so hold, that K. S. A. 79-3290 provides sufficient basic standards and reasonably definite policy for its administration and is not an unconstitutional delegation of legislative power. We are not unaware of a contrary conclusion reached in like litigation in a neighboring jurisdiction (*Cheney v. St. Louis Southwestern Railway Co.*, 239 Ark. 870, 394 S. W. 2d 731), but, with all due deference, this court has the responsibility finally of construing the Kansas constitution.

Appellant further contends the statutes in question are discriminatory and deny it equal protection of the law in violation of section 2 of the bill of rights and article 11, section 2, of the state constitution and section 1 of the fourteenth amendment to the federal constitution. Use of the standard classification of accounts wherein the straight-line method of depreciation is followed rather than newer forms of accelerated depreciation available to businesses other than those in appellant's position is again the basis of the

charge of discrimination. Again appellant emphasizes the ICC's accounting system is for rate-making and other regulatory purposes foreign to a determination of net income but the legislature's action in prescribing that system can scarcely be termed arbitrary. Appellant makes no complaint its income is singled out from those of other railroads for discriminatory treatment. The asserted grievance is common to the whole class and may be quickly disposed of. Nothing in either the state or federal constitutions requires that the same methods be used for valuing all types of property or businesses. Nothing forbids valuation of different classes of property by different methods where there is a reasonable basis for differentiation (see *Atlantic Coast Line v. Daughton,* 262 U. S. 413, 67 L. ed. 1051, 43 S. Ct. 620; *Nashville, C. & St. L. Ry. v. Browning,* 310 U. S. 362, 84 L. ed. 1254, 60 S. Ct. 968). We have already commented on the unique character of railroad accounting due to the particular nature of the business in view of which we find nothing in the challenged statutes or their operation discriminatory toward appellant or which denies it equal protection of the law.

The judgment is affirmed.

APPROVED BY THE COURT.

FATZER, SCHROEDER, and O'CONNOR, JJ., dissent.