**NORTH AMERICAN SAFETY VALVE INDUSTRIES, INC., Plaintiff,**

v.

**Larry E. WOLGAST, Secretary, Kansas Department of Human Resources, State of Kansas, Defendant.**

Civ. A. No. 85–2575.

United States District Court, D. Kansas.

Sept. 10, 1987.

Dennis Horner, Horner, Duckers & Cornwell, Kansas City, Kan., Ronald C. Spradley, Frederick H. Riesmeyer, II, Spradley and Wirken, Kansas City, Mo., for plaintiff.

Karl V. Cozad, Staff Counsel, Kansas Dept. of Human Resources, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on cross motions for summary judgment by plaintiff North American Safety Valve Industries, Inc., and defendant Larry E. Wolgast, Secretary of the Kansas Department of Human Resources, on Count I of plaintiff's amended complaint.

Plaintiff filed its original complaint on November 5, 1985, and its amended complaint on March 12, 1986. On March 4, 1986, we granted defendants' motion for summary judgment on plaintiff's section 1983 claim. *North American Safety Valve Industries, Inc. v. Brown,* No. 85–2575 (D.Kan., *unpublished,* March 4, 1986). On July 22, 1986, pursuant to stipulation, we dismissed, with prejudice, defendants National Board of Boiler and Pressure Vessel Inspectors and William E. Brown, which dismissal eliminated plaintiff's libel and slander claims. *North American Safety Valve Industries, Inc. v. Brown,* No. 85–2575 (D.Kan., *unpublished,* July 22, 1986). Finally, on November 13, 1986, we granted

defendant Larry E. Wolgast's motion, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike all allegations in plaintiff's amended complaint relating to the Constitution or laws of the United States. *North American Safety Valve Industries, Inc. v. Wolgast,* No. 85–2575 (D.Kan., *unpublished,* November 13, 1986) [Available on WESTLAW, DCT database].

As a consequence of our prior orders, the only remaining claim, and thus the only subject of these cross motions for summary judgment, is plaintiff's claim for declaratory judgment on the issue of whether the Kansas Boiler Safety Act (K.S.A. 44–913 *et seq.* (1986)), as applied to plaintiff, is unconstitutional under the Kansas Constitution as an invalid delegation of legislative authority.

In deciding whether summary judgment is appropriate, we are guided by well-established legal standards. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, the court must examine all evidence in the light most favorable to the opposing party. *Mogle v. Sevier County School District,* 540 F.2d 478, 482 (10th Cir.), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1976). Summary judgment must be denied unless the moving party demonstrates its entitlement to it beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir.1975).

Applying these legal standards to the instant case, we are convinced beyond a reasonable doubt that defendant is entitled to summary judgment as a matter of law. No genuine issue as to any material fact remains. In their motions for summary judgment, both plaintiff and defendant adopted this court's findings of fact in our January 16, 1986, Memorandum and Order denying plaintiff's request for a prelimi-

nary injunction. *North American Safety Valve Industries, Inc. v. Brown*, No. 85-2575 (D.Kan., *unpublished*, January 16, 1986). Because the uncontroverted facts in this case have been detailed previously, the findings of fact in our January 16, 1986 Memorandum and Order are hereby incorporated by reference and briefly summarized below.

Plaintiff is a Missouri corporation in the business of selling safety relief valves for installation in boiler and pressure vessels throughout the United States, including the state of Kansas. Defendant Wolgast, as Secretary of the Kansas Department of Human Resources, administers and supervises the Kansas Boiler Safety Act ("the Act"), enacted by the Kansas Legislature in 1977. K.S.A. 44-913 *et seq.* (1986).

As required by the Act, Secretary Wolgast adopted boiler regulations that follow "generally accepted nationwide engineering standards" for the safe installation, inspection, maintenance, and repair of boilers in Kansas. *See* Boiler Specifications and Inspections, K.A.R. 49-45-1 *et seq.* As authorized by the Act, these boiler regulations incorporate by reference the 1983 editions of Sections I and IV of the ASME Boiler and Pressure Vessel Code and the 1983 edition of the National Board Inspection Code. K.A.R. 49-45-1, 49-45-5, 49-45-20. The Act also provides aggrieved persons the opportunity for a hearing before the Secretary of the Department of Human Resources and for a judicial appeal from the secretary's findings. K.S.A. 44-928.

The 1983 edition of the National Board Inspection Code, incorporated into the Kansas Boiler Regulations, defines "repair" to safety valves as including "disassembling, reassembling, and/or adjustments which affect the safety or safety relief valve function unless such adjustments are made by the valve manufacturer or the authorized valve assembler." Appendix C-VR of the 1983 Inspection Code, at 156. Additionally, the 1983 Inspection Code requires all "repaired" safety valves be stamped with the "VR" symbol, which stamp can be used only with National Board authorization.

Plaintiff buys new valves from original valve manufacturers and authorized valve assemblers. Plaintiff resells some of these purchased valves in exactly the same condition in which they were received from the manufacturer. Plaintiff also resets and adjusts other new valves to meet its customers' specifications. Defendant considers plaintiff's valve resetting to be "repair" as defined by the 1983 Inspection Code. Thus, the reset valves must bear a "VR" stamp before being installed in Kansas.

The National Board has not authorized plaintiff to use the "VR" symbol, and plaintiff therefore cannot display the required "VR" symbol on any valve it resets. Moreover, plaintiff is not an ASME-certified valve manufacturer or assembler.

Although the American Society of Mechanical Engineers (ASME) and plaintiff entered into a modified consent decree (United States District Court for the Western District of Missouri, Civil Action No. 81-0046-CV-W-5), which provides that plaintiff's valve resetting does not contravene the ASME Boiler and Pressure Vessel Code, this consent decree does not affect the application or interpretation of the National Board Inspection Code as adopted by Kansas in its regulations. Consequently, Kansas boiler inspectors continue to reject plaintiff's reset valves because those valves do not bear the required "VR" stamp.

In addition to the above summarized findings of fact from our previous order, the court finds the following facts to be undisputed. On January 24, 1986, plaintiff requested a hearing with defendant, as provided for in K.S.A. 44-928, with respect to Kansas boiler inspectors' rejection of plaintiff's valves. After a March 11, 1986, hearing, defendant Wolgast issued his order, dated June 9, 1986. The secretary found as follows: (1) plaintiff's actions constitute a repair to safety valves governed by the Kansas act and regulations; (2) plaintiff was not authorized under existing Kansas regulations to make those repairs; and (3) plaintiff is not authorized to set pressure

relief valves without obtaining a "VR" stamp from the National Board. Plaintiff's request for reconsideration of the order was denied. Because plaintiff did not appeal the secretary's order to the district court within the statutorily prescribed time limit, it became final under K.S.A. 77–613.

There being no genuine issue of material fact, we now turn our focus to the one remaining issue in this case: is the Kansas Boiler Safety Act, K.S.A. 44–913 *et seq.*, ("the Act"), as applied to plaintiff, unconstitutional under the Kansas Constitution as an invalid delegation of legislative authority.

As a preliminary matter, we note a well-recognized rule of construction: the constitutionality of a statute is presumed; "all doubts must be resolved in favor of the statute's legality, and only a clear showing that the statute violates the constitution will justify striking the statute." *Parcell v. State of Kansas*, 468 F.Supp. 1274, 1276 (D.Kan.1979); *see also Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Sutherland v. Ferguson*, 194 Kan. 35, 397 P.2d 335 (1964); *State ex rel. Anderson v. Fadely*, 180 Kan. 652, 308 P.2d 537 (1957). Plaintiff has failed to make a "clear showing" of unconstitutionality.

Plaintiff claims that the Act violates article 2, section 1 of the Kansas Constitution (commonly named the "non-delegation doctrine"), which provides that "[t]he legislative power of this state shall be vested in a house of representatives and senate." According to the plaintiff, the Act violates the Kansas non-delegation doctrine by allowing an administrative agency, the Department of Human Resources, to delegate its public duties to a private entity, the National Board of Boiler and Pressure Vessel Inspectors ("the National Board"). Plaintiff contends the Department of Human Resources abdicated its duties to the National Board when the secretary incorporated by reference the 1983 National Board Inspection Code ("the Code"), which Code gives the National Board power to establish requirements for, and grant, deny or cancel a "VR" Certificate of Authorization.

When challenging a statute's constitutionality on grounds of improper delegation, two avenues of argument are available. First, one can claim that the statute invalidly delegates legislative authority to private groups. Second, one can alternatively or additionally claim that the statute constitutes an improper delegation because it fails to provide adequate standards to guide the administrative agency in exercising its authority. As defendant correctly points out, plaintiff does not contend that the Act fails to provide clear standards. Consequently, plaintiff relies solely on the first avenue of argument to support its invalid delegation claim.

The long-standing test for determining if a delegation of power is unconstitutional under the Federal Constitution derives from *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935): (1) Does the statute contain an intelligible principle (*i.e.*, are there standards of legal obligation)? (2) Does the statute delegate a limited or narrow scope of power? (3) Does the statute contain specified procedural requirements? *Schechter*, 295 U.S. at 529–42, 55 S.Ct. at 842–48. Since plaintiff's claim is restricted to the Kansas Constitution, we need not address whether the Kansas Boiler Safety Act meets the *Schechter* test. Nevertheless, in further support of our granting defendant's motion for summary judgment, we note that the Act does meet the above three-part test. First, the Act clearly states a standard of legal obligation: rules and regulations governing Kansas boiler safety must follow nationwide engineering standards. K.S.A. 44–916(b) and (c). Second, the statute delegates to the Secretary of the Department of Human Resources the limited power to adopt rules and regulations consistent with the above standard and the provisions of the Act. Finally, the statute contains procedural requirements for the adoption of the required rules and regulations (*Id.* 44–916(d)), as well as procedures affording a hearing to persons aggrieved by the Act (*Id.* 44–928).

Although the Kansas cases do not expressly adopt the *Schechter* test, Kansas

courts do cite *Schechter* with approval and do analyze delegation issues in a similar fashion. *See, e.g., Fadely,* 180 Kan. 652, 308 P.2d 537 (1957); *State ex rel. Donaldson v. Hines,* 163 Kan. 300, 182 P.2d 865 (1947). In deciding whether a statute constitutes an improper delegation, the Kansas Supreme Court first considers "whether the power given is actually legislative or merely administrative"; *i.e.,* whether the statute gives power to determine what the law is or gives power to enforce, apply, and administer the law as enacted by the Kansas Legislature. *Missouri Pacific Railroad Co. v. McDonald,* 207 Kan. 744, 748, 486 P.2d 1347, 1351 (1971); *see also Fadely,* 180 Kan. at 663, 308 P.2d at 547; *Hines,* 163 Kan. at 314, 182 P.2d at 868; *accord United States v. Best,* 476 F.Supp. 34, 38 (D.Colo.1979). According to the Kansas Supreme Court, "legislative power is not unlawfully delegated by giving discretionary functions and authority to the agency which is to carry a statute into effect so long as the statute lays down basic standards and reasonably definite policy for its administration." *McDonald,* 207 Kan. at 749, 486 P.2d at 1352; *see also Fadely,* 180 Kan. at 663, 308 P.2d at 547. Again, because plaintiff neither alleged nor argued that the Act lacks adequate standards, it is left with the argument that the statute gives the National Board legislative powers—powers to determine what the law is. A careful reading of the Act reveals no such powers are given to the National Board.

The portion of the Act with which plaintiff finds fault is section 44–916. The legislature set the law regarding boiler safety in Kansas with two mandates: (1) "The secretary shall adopt rules and regulations, consistent with the provisions of this act, for the safe construction, installation, inspection, maintenance and repair of boilers in this state...." K.S.A. 44–916(a); (2) The rules and regulations adopted for construction of new boilers and for the inspection, maintenance, and repair of boilers "shall be based upon and at all times follow generally accepted nationwide engineering standards." *Id.* 44–916(b) and (c). Additionally, the legislature gave the secretary permission to administer this law by adopting rules and regulations which incorporated by reference "specific editions, or portions thereof, of the boiler and pressure vessel code of the American society of mechanical engineers ... [and] the inspection code of the national board of boiler and pressure vessel inspectors...." *Id.*

Acting within this permitted authority, the defendant secretary fulfilled his mandated duty by adopting boiler safety rules and regulations which did incorporate by reference the codes the legislature suggested. Boiler Specifications and Inspections, K.A.R. 49–45–1 *et seq.*[1] The plaintiff claims this incorporation by reference of the National Board Inspection Code invalidly delegates legislative authority to a private entity. In essence, the plaintiff argues that because the National Board, in its discretion, can amend and modify the code, the National Board, rather than defendant secretary, has the ultimate authority in determining how the Kansas Boiler Safety Act will be administered. Moreover, plaintiff appears to claim that this ability to modify the code without review by the Kansas Department of Human Resources or the Kansas Legislature gives the National Board power to legislate. In view of the Act's mandatory procedural safeguards, plaintiff's claims are, as defendant characterized them, specious.

Section 44–916(d) provides that all rules and regulations adopted pursuant to the Act are "subject to the provisions of article 4 of chapter 77 of the Kansas Statutes

---

1. The plaintiff argues that the National Board's code was not properly incorporated by reference because the regulation referring to this code, K.A.R. 49–45–20, lacks the necessary language, "is hereby adopted by reference." Although we recognize plaintiff's argument to be technically correct, the missing language is no more than a typographical error. All the regulations in Article 45, except 49–45–20, contain the required language. Without the phrase, "is hereby adopted by reference," Regulation 49–45–20 is meaningless. Reading this "defective" regulation in the context of the entire article, the court sees no difficulty with adding the phrase by implication. Therefore, the secretary did adopt by reference the National Board's code and the code is recognized as controlling law in Kansas.

Annotated." K.S.A. 44–916(d). This article establishes mandatory procedures for adopting rules and regulations. Before an administrative agency can formally adopt a rule and regulation, the rule and regulation must be submitted to the secretary of administration and the attorney general for approval. *Id.* 77–420 (1986 Supp.). If the rule and regulation adopts by reference a separate document, a copy of that document must accompany the agency's submissions to the secretary of administration and the attorney general. *Id.* Also, section 77–421 provides for public hearings, after notice, at which "all interested parties shall be given reasonable opportunity to present their views or arguments on adoption of the rule and regulation...." *Id.* 77–421(b) (1984). Finally, under section 77–426, "provision is made for examination, modification or rejection of these regulations by the legislature. Thus *the regulations are indirectly regulations which have been approved and adopted by the legislature.*" *Boswell, Inc., d/b/a Broadacres v. Harkins,* 230 Kan. 738, 741, 640 P.2d 1208, 1210, *appeal dismissed,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982) (emphasis added); K.S.A. 77–426 (1986 Supp.).

Although plaintiff's claims might be successfully argued if the described procedures applied only to the *initial* adoption of rules and regulations, its claims miss the mark in light of the fact that section 77–415 defines "rule and regulation" to include *amendments or revocations* to originally adopted rules and regulations. K.S.A. 77–415(4) (1984). Consequently, when and if the National Board amends the Inspection Code adopted by K.A.R. 49–45–20, the amendments would become Kansas law only *after* the agency submits the

amendment to the secretary of administration and the attorney general, *after* notice and a public hearing, and *after* the legislature examines the amendment.[2]

■ Therefore, defendant secretary, in adopting by reference the National Board's Inspection Code, has not delegated legislative authority to a private entity. Nor has the Kansas legislature violated article 2 section 1 of the Kansas Constitution by permitting the secretary to fulfill his mandated duties by adopting rules and regulations which incorporate by reference codes developed by private organizations. Instead, the legislature retained its legislative powers and delegated only administrative powers. The legislature created a statute with a clear standard for boiler safety. Furthermore, under K.S.A. 77–426, the legislature retained the power to be the final arbiter of all rules and regulations adopted under the statute, whether those rules and regulations are initial adoptions by the agency or subsequent amendments made by private entities. In contrast, the defendant secretary is empowered only to adopt regulations for administering the statute. *See Hines,* 163 Kan. at 314, 182 P.2d at 868.

■ Plaintiff's cited authorities do not dispute these conclusions. A careful reading of the Kansas cases cited in plaintiff's Suggestions in Support reveals that the Kansas courts not only distinguish delegated authority as administrative or legislative, but also differentiate between the delegation of ultimate and interim authority to set standards. According to Kansas case law, if a nongovernmental agency's standards are used as a guide to be followed by a state agency, and the agency retains the

---

2. According to the plaintiff, the National Board's modifications to the Inspection Code become *immediately binding* upon holders of "VR" Certificates of Authorization. Not only do the outlined procedures prevent such an occurrence, but the plaintiff overstates the National Board's own rules. Administrative Rule 2.1.1 states:

> The National Board may at any time, through the Committee on Repair of Pressure Relief Valves and the Board of Trustees, make such regulations concerning the issuance and use

of such Valve Repair stamp. All such regulations *shall become* binding upon holders of valid Valve Repair Certificates of Authorization.

National Board "VR" Repair Symbol Administrative Rules and Procedure, p. 153, an appendix to 1983 edition of National Board Inspection Code (emphasis added). The rule's future tense belies plaintiff's argument and implies that the National Board would notify certificate holders before requiring their "immediate" adherence to new regulations.

ultimate authority to approve such standards, no unlawful delegation occurs.[3] *See, e.g., Gumbhir v. Kansas State Board of Pharmacy,* 228 Kan. 579, 618 P.2d 837 (1980) (delegation held to be unconstitutional because state Board did not have ultimate authority); *State ex rel. Beck v. Gleason,* 148 Kan. 1, 79 P.2d 911 (1938) (delegation valid because state Board had ultimate authority); *State v. Crawford,* 104 Kan. 141, 177 P. 360 (1919) (delegation invalid because statute void for uncertainty; all authority to develop an electrical code was given to a nongovernmental entity).

Due to the procedures outlined previously, as well as to the permissive language of the statute, the agency (as well as the legislature) retains the ultimate authority over boiler safety standards. Because the Act permits rather than mandates the secretary's use of the ASME and National Board codes, the secretary has the authority to use all, part, or none of these codes. This authority presumably includes the ability to determine that other standards are more appropriate in meeting the required "nationwide engineering standards," and the complimentary ability to replace the adopted codes with more suitable standards.[4] This presumption is based upon common sense, and is further strengthened by the fact that the secretary was receptive to plaintiff's suggestion that a certification program other than the National Board's be adopted. Plaintiff was informed that it could "bring together a group for the purpose of preparing standards and seeking approval of the Department of Human Resources for the adjusting or resetting of safety valves." *North American Safety Valve Industries, Inc. v. Brown,* Hearing before Secretary of Department of Human Resources (March 11, 1986), p. 16. Undoubtedly, the ultimate authority for boiler safety in Kansas rests with the Department of Human Resources and the Kansas Legislature, not with the National Board. Thus, no unlawful delegation has occurred.

The conclusion that the Kansas Boiler Safety Act is constitutional should warrant no surprise. Although there can be no delegation of the naked right to legislate, there is not, nor has there ever been, an absolute prohibition against delegation. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1939); *United States v. Best,* 476 F.Supp. 34 (D.Colo.1979). As the Kansas Supreme Court previously stated: "[I]n this day and age, with governmental functions becoming more and more complex, more and more powers are of necessity being delegated to administrative officials, and that the advisability of vesting more power in boards and agencies is solely a question for legislative decision." *Sutherland v. Ferguson,* 194 Kan. 35, 37–38, 397 P.2d 335, 337 (1964). Similarly, as it becomes increasingly necessary for inadequately staffed and funded administrative agencies to deal with complex technical subjects, private groups often must be relied upon in preparing rules and regulations. The defendant secretary commented on this need

---

**3.** One Kansas Supreme Court case found no improper delegation even when the state agency did not retain the "ultimate" authority. In *Missouri Pacific Railroad Co. v. McDonald,* 207 Kan. 744, 486 P.2d 1347 (1971), the court approved a statute which authorized the federal Interstate Commerce Commission (ICC) to prescribe a uniform system of tax accounting for railroads. The ICC had authority to amend or change this system without notifying or consulting with the director of revenue, who enforced whatever system the ICC prescribed. Despite the fact that the ICC, and not the Department of Revenue, possessed the final authority in railroad tax accounting matters, the court found no unconstitutional delegation. *Id.* at 751, 486 P.2d at 1353.

**4.** In its Suggestions in Support, plaintiff spent considerable time on a statutory construction argument which is answered by these same conclusions. Although the Act states that boiler safety "rules and regulations ... *may* require the use of [the national] board's 'R' stamp for repairs," the permissive language allows the secretary to adopt any such stamp (or *no* such stamp) and does not, as the plaintiff argues, limit the secretary to adopting only the "R" stamp. K.S.A. 44–916(c) (1986) (emphasis added). The only limit to the secretary's discretion is that set by the Act itself: whatever actions the secretary takes must be in keeping with "generally accepted nationwide engineering standards." *Id.* 44–916(b) and (c).

for private groups' input in his June 9, 1986, order:

> The boiler board recommends to the Secretary that at this point in time the State of Kansas defer to the National Board for determinations relating to qualifications of organizations or employees to reset and/or repair valves. This recommendation is made in light of the small staff of the Kansas boiler section and the cost to Kansas taxpayers for hiring and training people to perform "shop reviews."

*North American Safety Valve Industries, Inc. v. Brown,* Hearing before Secretary of Department of Human Resources (March 11, 1986), p. 15.

An underlying purpose of the "nondelegation doctrine" is to insure government accountability; that is, to insure adequate safeguards are provided to those affected by administrative rules and regulations. *See Corvallis Lodge No. 1411 v. Oregon Liquor Control Commission,* 67 Or.App. 15, 677 P.2d 76, 78–80 (1984).

The Kansas Boiler Safety Act, K.S.A. 44–913 *et seq.* (1986), does not delegate legislative power, nor does it shift government accountability to private organizations. Consequently, the Act withstands plaintiff's constitutional challenge under article 2 section 1 of the Kansas Constitution.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment on Count I of plaintiff's amended complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's complaint be dismissed.

IT IS FURTHER ORDERED that costs are assessed to plaintiff.