### 23216

Francis Edwin BASS, Jr.; Marvin L. Jones; James R. Marvin, Wilton A. Hockenberry; Catherine Louise Moyers; John Gilreath, Mildred B. Jenkins; J. Loring Jenkins, individually and for the benefit and on behalf of all others similarly situated, Respondents/Appellants v. STATE of South Carolina, a body Politic, and The South Carolina Tax Commission, Appellants/Respondents.

(395 S.E. (2d) 171)

Supreme Court

*Chief Deputy Atty. Gen. Joe L. Allen, Jr., Deputy Atty. Gen. Ray N. Stevens* and *Asst. Atty. Gen. Arlene D. Hand,* Columbia, *for appellants/respondents.*

*Gene M. Connell, Jr.* of *Kelaher, Haar, Bass & Connell,* Surfside Beach, *for respondents/appellants.*

Heard May 7, 1990.

Decided July 31, 1990.

*Per Curiam:*

This action was commenced by federal retirees against the State of South Carolina and the South Carolina Tax Commission (hereafter, collectively referred to as the "State") on April 4, 1989. The action was brought because of a March 28, 1989 United States Supreme Court decision, *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 109 S. Ct. 1500, 103 L. Ed. (2d) 891 (1989), in which it was held that state taxation of income of persons retired from employment or service with the federal government at a greater rate than the taxation of

income of persons retired from state service, violated the doctrine of intergovernmental tax immunity and was thus constitutionally prohibited.

Prior to the *Davis* decision, South Carolina had a statute that granted retired federal employees a $3000.00 exemption of retirement income from South Carolina income tax while retired state employees received a total exemption of their retirement income from South Carolina income tax. Since the *Davis* decision, South Carolina's income statute that applies to state and federal retirees has been amended so as to comply with *Davis.* However, the federal retirees claimed and the trial court agreed that the federal retirees were entitled to a refund for income taxes paid during the tax years of 1985 through 1988 pursuant to one of South Carolina's refund statutes, S.C. Code Ann. § 12-47-440 (1976). Although both parties appeal, the primary issues before this Court are whether: (1) the *Davis* decision should be applied prospectively from March 28, 1989, so as to deny federal retirees refunds, and (2) the enactment of S.C. Code Ann. § 12-47-445 (1989) operates to bar the federal retirees' claim for refunds. We reverse the order of the trial court which granted federal retirees a refund of income tax collected by the state for the years 1985 through 1988.

## I. DISCUSSION

### PROSPECTIVE APPLICATION OF DAVIS

The United States Supreme Court did not announce whether its decision in *Davis* had retrospective or prospective application because Michigan conceded that "to the extent appellant has paid taxes pursuant to this invalid tax scheme, he is entitled to a refund." *Davis v. Michigan Dept. of Treasury,* 489 U.S. at —, 109 S. Ct. at 1508-1509, 103 L. Ed. (2d) at 906. Here however, there is no such concession. Therefore, in order to determine whether federal retirees are entitled to a refund for monies paid under South Carolina's former discriminatory tax laws, we must first determine whether the holding of *Davis* is to be applied retroactively or prospectively. The State argues that we should apply the test announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. (2d) 296 (1971), to determine

whether *Davis* should be applied retrospectively or prospectively. By application of this test, the State contends that *Davis* need only be applied prospectively and the federal retirees would not be entitled to a refund. We agree.

Although this particular issue is one of first impression in this State, particularly in light of the fact that *Davis* was only recently decided, other courts such as the Arkansas Supreme Court in *American Trucking Associations, Inc. v. Gray*, 295 Ark. 43, 746 S.W. (2d) 377 (1988), have been faced with a similar question. In *Gray*, the Arkansas Supreme Court was faced with whether to apply the United States Supreme Court opinion in *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266, 107 S. Ct. 2829, 97 L. Ed. (2d) 226 (1987), retrospectively or prospectively. In *Scheiner*, the United States Supreme Court held that another state's highway tax which treated truckers whose base of operation were outside the state, differently from those based in the taxing state, violated the commerce clause. In response to the *Scheiner* decision, the Arkansas Supreme Court struck a similar taxing provision in *Gray*. After applying the test announced in *Chevron* for determining whether a judicial decision should be applied retroactively or prospectively, the Arkansas Supreme Court held that the United States Supreme Court decision in *Scheiner* should have prospective application only. Consequently, out-of-state truckers were denied refunds of taxes paid prior to the United States Supreme Court decision in *Scheiner*.

The Georgia Supreme Court has also followed an analysis consistent with *Gray* in an action for a refund of taxes. In *James B. Beam Distilling Co. v. State*, 259 Ga. 363, 382 S.E. (2d) 95 (1989), the distilling company sought a $2,400,000.00 refund for excise taxes paid in 1982, 1983, and 1984 pursuant to a Georgia statute, Ga. Code Ann. § 3-4-60 (1982), which imposed a higher tax on alcoholic beverages imported into Georgia than on those manufactured in Georgia. The statute was amended in 1985, shortly after the United States Supreme Court found a similar statute to be unconstitutional. *See, Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S. Ct. 3049, 82 L. Ed. (2d) 200 (1984). The lower court found that the pre-1985 Georgia statute was unconstitutional because it violated the commerce clause of the United States Constitution, but that

the ruling would only be applied prospectively so that the distilling company was not entitled to a refund.

On appeal, the distilling company argued that the lower court erred in applying the decision prospectively only and argued that Ga. Code Ann. § 48-2-35(a) (1982), which provides, "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him . . .," mandated retroactive application of a constitutional decision. In rejecting the latter argument, the Georgia Supreme Court noted that the statute did not describe how it should be determined that a tax was "illegally assessed" and that the statute did not address the issue of a retroactive versus prospective application of a constitutional decision.[1] In affirming the lower court's decision that the distilling company was not entitled to a refund, the Georgia Supreme Court first applied the test set forth in *Chevron* to determine whether to retroactively or prospectively apply a judicial decision, and found that only prospective application of the decision was appropriate. In holding that the decision should not be applied retroactively, the Georgia Supreme Court did not need to examine state law, primarily the refund statute, as to how to apply the decision retroactively.

Only one appellate court has had the opportunity to review specifically whether *Davis* should be applied retroactively or prospectively. In *Hackman v. Director of Revenue, State of Missouri,* 771 S.W. (2d) 77 (Mo. 1989), the Missouri Supreme Court held that under *Davis,* Missouri's tax scheme which discriminated between state and federal retirees, violated the principles of intergovernmental tax immunity, and that the federal retirees were entitled to a refund under its statute. Rather than addressing whether *Davis* was to be applied retrospectively or prospectively, the majority in *Hackman* made a "quantum leap" from a determination that Missouri's tax law was unconstitutional, to a determination that refunds were due vis-a-vis its interpretation of Missouri's refund statute. It appears that the majority in *Hackman* interpreted

---

[1] S.C. Code Ann. § 12-47-440 (1976), under which the federal retirees proceed for their refund allows an action for taxes "erroneously, improperly or illegally assesed . . ." This statute like the one in *Beam,* does not address the issue of retroactive versus prospective application of a constitutional decision.

the Missouri refund statute as always mandating a tax refund when a statutory scheme is found to be unconstitutional.

We find that the analysis employed by the majority in *Hackman* is flawed in that the majority should have first determined under *Chevron*, whether *Davis* should be retrospectively or prospectively applied. Only upon a finding that *Davis* is to be retrospectively applied would the court need to examine state law to determine how to apply the *Davis* holding retroactively. On the other hand, upon a finding that *Davis* should only be applied prospectively, no further inquiry is needed. This analysis is consistent with that used by the Arkansas Supreme Court in *Gray* and the Georgia Supreme Court in *Beam* and additionally, is consistent with that suggested by the dissenting opinion in *Hackman*.

Hence, we will proceed under the United States Supreme Court's three-pronged test which was set forth in Chevron to determine whether prospective application of Davis is warranted. Chevron sets forth three factors that must be considered in cases dealing with the retroactivity question:

(1) Consider whether the decision to be applied establishes a new principal of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

(2) Balance the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

(3) Weigh the inequity imposed by retroactive application, for if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

"It cannot be disputed that *Davis* represents both a new principle of law and a case of first impression." *Hackman v. Director of Revenue, State of Missouri*, 771 S. W. (2d) at 86 (Welliver, J., dissenting). The *Davis* decision for the first time, held that the doctrine of intergovernmental tax immunity applied to the retirement income of a federal retired em-

ployee. Prior to *Davis*, the State taxed some of the income of federal retirees and exempted the income of state retirees. This began in 1945 by the exemption of the benefits paid state retirees.[2] No similar provision existed that exempted all of the retirement income of federal retirees. During this time, federal retirees residing in South Carolina paid the tax without protest and did not raise the issue of intergovernmental tax immunity. Both the State and the federal retirees relied upon this tax treatment during this time. The *Davis* decision invalidated that clear past precedent and established a new principle of law. The first prong of the *Chevron* test is satisfied.

As to the second prong of the *Chevron* test, the Georgia Supreme Court in *Beam* held that it had no application "because the statute at issue was repealed . . ." Similar circumstances exist here. During all the years that the taxes were collected from the federal retirees, the State had no reason to believe the tax was unconstitutional. As soon as the State became aware of the unconstitutionality of the differential tax treatment between federal and state retirees, the legislature rectified the defects. Thus, the first and second prongs of the Chevron test appear to favor the prospective application of *Davis*.

All that remains to be considered is the third prong of *Chevron*, the weighing of the equities. If *Davis* is applied retroactively, the State faces liability for approximately $200,000,000.00 in refunds for taxes it collected in good faith under an unchallenged and presumptively valid statute. South Carolina would have to refund this sum for taxes already received which it has already spent for public purposes; many of these benefits have already been received by federal retirees residing in South Carolina. The refund of such an exorbitant amount would impose a severe financial burden on the State and its citizens as well as endanger the financial integrity of the State.

We find that all parts of the *Chevron* test have been met

---

[2] Act No. 157, § 13, 1945 S.C. Acts 232.

and weigh heavily in favor of the prospective[3] application of the new principle of law contained in the *Davis* decision. Because we have not applied *Davis* retroactively and no refund is mandated[4] under our analysis, there is no need to examine state law.

Even were we to examine state law, the federal retirees would be barred from receiving a refund. The proper refund statutes under which the federal retirees should have proceeded are S.C. Code Ann. §§ 12-47-210 and 12-47-220 (1976), which require the taxpayer to pay under protest before bringing a refund action.[5] We have previously stated that the exclusive remedy for the recovery of the erroneous assessment of income taxes is through these "pay under protest" statutes. *See, Perpetual Bldg. & Loan Ass'n of Columbia v. South Carolina Tax Commission,* 255 S.C. 523, 180 S.E. (2d) 195 (1971). The recent United States Supreme Court case of *McKesson Corp. v. Division of Alcoholic Beverage and Tobacco,* — U.S. —, 110 S. Ct. 2238, 110 L. Ed. (2d) 17 (1990) reaffirms a state's ability to establish procedural requirements which must be complied with before a refund action is permitted. Here, the federal retirees did not comply with the "pay under protest" procedural mandates.

---

[3] This court has previously refused to give a United States Supreme Court decision retroactive effect based upon the impact of the decision on the State. *See Wilson v. Jones,* 281 S.C. 230, 314 S.E. (2d) 341 (1984) (refusal to apply *Trimble v. Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. (2d) 31 (1977), retroactively because it "would disrupt the orderly process of probate" in South Carolina). *Wilson* has since been modified. *See, Mitchell v. Hardwick,* 297 S.C. 48, 374 S.E. (2d) 681 (1988).

[4] Although the federal retirees cite several United States Supreme Court cases for the proposition that the State cannot retain unconstitutionally collected taxes because a denial of refunds is itself a violation of constitutional rights, this argument is without merit. Those cases cited by the federal retirees for support of this proposition involve situations where the payment of taxes was made under protest or was compulsory (as where property is threatened to be seized or sold if taxes are not paid) rather than voluntary. *See Ward v. Board of County Com'rs of Love County,* 253 U.S. 17, 40 S. Ct. 419, 64 L. Ed. 751 (1920); *Iowa-Des Moines Nat. Bank v. Bennett,* 284 U.S. 239, 52 S. Ct. 133, 76 L. Ed. 265 (1931). In this case, the payments made by the federal retirees were voluntary, not coerced.

[5] Section 12-47-440 under which the federal retirees proceeded, deals only with the recovery of license fees and taxes. *See, City of Columbia v. Glens Falls Insurance Company,* 245 S.C. 119, 139 S.E. (2d) 529 (1964).

## II. CONCLUSION

Under the *Chevron* test, we find that *Davis* is to be prospectively applied from the date the opinion was rendered, March 28, 1989, and that the federal retirees are not entitled to a refund of income taxes collected prior to that time.[6] Because we find that *Davis* is not to be retrospectively applied, we do not need to engage in an analysis of state law. Further, as the federal retirees are not entitled to relief, we do not need to address whether this action was properly maintained as a class action or whether the trial judge applied the proper interest rate to the refunds. The order of the trial court which granted the federal retirees a refund of income tax collected by the State for the years 1985 through 1988 is

Reversed.

---

[6] In *American Trucking Associations, Inc. v. Smith*, — U.S. —, 110 S. Ct. 2323, 110 L. Ed. (2d) 148 (1990), the United States Supreme Court followed a *Chevron* analysis consistent with that employed by this Court.