No. 65,848

KEYTON BARKER and PAULINE BARKER, *et al., Appellants,* v. STATE OF KANSAS, *et al., Appellees.*

(815 P.2d 46)

Opinion
filed July 12, 1991.

*Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, argued the cause, and *John C. Frieden* and *Wendell Betts*, of the same firm; *Kenton C. Granger, Raymond L. Dahlberg, Angela K. Green,* and *Kristin L. Altice,* of Niewald, Waldeck & Brown, of Overland Park; *Terence A. Lober*, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth; and *Mark G. Ayesh, Michael D. Herd,* and *Roger M. Theis*, of Ayesh, Docking, Herd & Theis, of Wichita, were with him on the briefs for appellants.

*James Bartle*, attorney, Kansas Department of Revenue, argued the cause, and *Mark A. Burghart*, general counsel, and *Michael M. Rehm*, attorney, were with him on the briefs for appellees.

The opinion of the court was delivered by

SIX, J.: This is a constitutional law case. Plaintiffs/taxpayers (retired military), in consolidated class actions, challenge the taxing of federal military retirement benefits under the Kansas Income Tax Act (KITA), K.S.A. 79-3201 *et seq.* State and local government retirement benefits are not taxed under KITA.

The plaintiffs/taxpayers appeal from the trial court's memorandum decision and order, which denied their motion for summary judgment and entered summary judgment in favor of the defendants (the State, the Department of Revenue, and two state officials). The trial court upheld the differential tax treatment of federal military retirement benefits under KITA.

Is K.S.A. 79-3201 *et seq.* constitutional? The primary issue is whether the inconsistent tax treatment is directly related to and justified by significant differences between federal military retirees taxed by Kansas and other retirees not taxed by Kansas.

Our jurisdiction is under K.S.A. 20-3017. We granted the taxpayers' motion to transfer from the Court of Appeals.

We find no error and affirm. K.S.A. 79-3201 *et seq.* is constitutional.

## Facts

On March 28, 1989, the United States Supreme Court held that a Michigan statute imposing a state income tax on retirement benefits of federal civil service retirees, while exempting retirement benefits of State retirees, violated the doctrine of intergovernmental tax immunity. *Davis v. Michigan Dept. of*

*Treasury,* 489 U.S. 803, 103 L. Ed. 2d 891, 109 S. Ct. 1500 (1989).

On April 17, 1989, the instant class action suits were filed challenging the validity of the provisions of KITA. The challenged provisions tax federal military retirement benefits while exempting retirement benefits received by state and local government retirees.

All named plaintiffs in the instant action are Kansas residents who are retired members of the United States Armed Forces and, where applicable, their joint taxpayer spouses. They have paid Kansas income taxes on federal military retirement pay during one or more years from 1984 through 1989. The certified class is defined as:

"[A]ll retired members of the federal or United States armed forces who are recipients of federal armed forces retirement benefits [under applicable provisions of Title 10 or Title 14 or the United States Code] subject to Kansas state income taxation during one or more of the tax years from 1984 through 1989 and, where applicable, their respective spouses who have filed or will file joint Kansas state income tax returns during one or more of the tax years from 1984 through 1989."

There are approximately 14,000 military retirees who are members of the class.

Defendants are the State of Kansas, the Kansas Department of Revenue, Secretary of Revenue Ed Rolfs, and Acting Director of Taxation Steve Stotts. Defendants Rolfs and Stotts are named in their official capacity as administrators charged with enforcement of KITA.

### The Taxpayers' Claims

The taxpayers claim KITA discriminates against federal military retirees and, therefore, violates: (1) 4 U.S.C. § 111 (1988), and constitutional principles of intergovernmental tax immunity as discussed and applied in *Davis;* (2) the supremacy clause of the United States Constitution; (3) the privileges and immunities clause of the Fourteenth Amendment of the United States Constitution; and (4) Article 11, § 2 of the Kansas Constitution. The taxpayers also allege deprivation of their civil rights as secured by the United States Constitution and laws in violation of the Fourteenth Amendment and of 42 U.S.C. § 1983 (1988).

The taxpayers sought declaratory judgment that KITA is unconstitutional as applied to federal military retirees and that military retirement pay is exempt from Kansas income taxation for tax years 1984 to the present. The taxpayers also seek a permanent injunction prohibiting defendants from levying, assessing, and/or collecting Kansas income taxes on military retirement benefits. Refunds of Kansas income tax paid by members of the plaintiff class on their military retirement benefits from tax years 1984 to the present (with interest at the rate of 12% per year until paid) and costs including reasonable attorney fees under 42 U.S.C. § 1988 (1988), are also requested.

The taxpayers filed a motion for summary judgment. They argued that under *Davis* KITA is unconstitutional because it discriminates in favor of state and local government retirees and against federal military retirees based on the source of retirement benefits. Taxpayers further argued that the inconsistent tax treatment is neither directly related to nor justified by significant differences between the classes of retirees.

## Defendants' Claims

The defendants responded to the taxpayers' contentions by arguing that the inconsistent tax treatment of the two classes of retirees is directly related to, and justified by, significant differences between the two classes; that *Davis* has been complied with; and that the Kansas income tax law is supported by a rational basis and does not violate the Kansas Constitution. Defendants also argued that the taxpayers are not entitled to relief under 42 U.S.C. § 1983 because: (1) the State of Kansas and the Kansas Department of Revenue are not "persons" under § 1983; (2) the Secretary of Revenue and the Director of Taxation, acting in their official capacities, are not "persons" under § 1983; (3) exhaustion of administrative remedies is required before a state tax may be challenged under § 1983; and (4) 4 U.S.C. § 111 does not create enforceable individual rights. Finally, defendants asserted that if the court finds KITA invalid, the taxpayers are not entitled to retrospective relief under either federal law or K.S.A. 79-32,105(c).

## The Trial Court's Decision

The trial court entered its memorandum decision denying the

taxpayers' motion for summary judgment and entered summary judgment *sua sponte* for defendants. The trial court held that KITA, as applied to military retirement pay, is constitutional and does not violate 4 U.S.C. § 111. Finding that there are substantial differences between the two classes (military retirees and state and local government retirees) justifying the disparate tax treatment, the trial court stated:

"Viewed in toto the military retired system is unique to other retirement systems, especially in light of the fact that military retirees are subject to recall and during active service do not contribute to their retired pay. The absence of contribution during active service by military retirees or by their employer, the Federal Government, is consistent with the [*United States v.*] *Tyler*, [105 U.S. (15 Otto) 244, 26 L. Ed. 985 (1881),] and *McCarty [v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981),] decisions which state military retired pay is reduced compensation for reduced current services."

The trial court considered all other issues raised by the parties and found them to be without merit. Finding KITA valid, the trial court did not address the request for refunds. The trial court stated that defendants' motion for partial summary judgment on the civil rights claim under 42 U.S.C. § 1983 was moot.

### The Relevant KITA Tax Scheme

Under KITA, federal adjusted gross income (AGI) is the starting point for determining an individual's Kansas income tax liability. An individual's Kansas AGI is an individual's federal AGI, subject to certain modifications. K.S.A. 1990 Supp. 79-32,117(a). An individual's Kansas taxable income is Kansas AGI less Kansas deductions and exemptions. K.S.A. 79-32,116.

Federal AGI includes military retirement benefits and state and local government retirement benefits. 26 U.S.C. § 61(a) (1988). Retirement benefits received from the Kansas Public Employees Retirement System (KPERS) are subtracted from federal AGI to arrive at Kansas AGI and are exempt from Kansas income tax. K.S.A. 1990 Supp. 79-32,117(c)(ii). See K.S.A. 1990 Supp. 74-4923(b) (also exempts benefits paid under the Kansas Police and Fireman's Retirement System [KP&F]). There are similar statutory exemptions for benefits received by other retired state and local employees. K.S.A. 1990 Supp. 74-4978g (benefits from the highway patrol pension fund payable under KP&F); K.S.A.

72-1768a and K.S.A. 72-17,122 (benefits paid under the school employees' supplemental retirement system); K.S.A. 1990 Supp. 20-2618 (benefits paid under retirement systems for judges); K.S.A. 12-111a, K.S.A. 1990 Supp. 12-5005, K.S.A. 13-14a10, and K.S.A. 14-10a10 (benefits paid to policemen and firemen under local retirement plans); K.S.A. 1990 Supp. 79-32,117(c)(ix) (benefits paid to retired city employees); and K.S.A. 1990 Supp. 79-32,117(c)(xiii) (benefits paid to retired employees of a board of public utilities).

Certain federal retirement benefits are also subtracted from federal AGI to arrive at Kansas AGI and are exempt from Kansas income tax. Benefits received as annuities under the federal civil service retirement system or benefits received by retired railroad employees are exempted from Kansas income tax. K.S.A. 1990 Supp. 79-32,117(c)(vii) and (viii).

Military retirement benefits are not subtracted from federal AGI and are included in Kansas AGI under KITA. Military retirement benefits are subject to Kansas income tax. Military retirees age 62 or older are entitled to a $120 tax credit against Kansas income tax. K.S.A. 79-32,111b.

The net result is that benefits paid to federal civil service, railroad, state, and local government retirees are exempt from Kansas income tax while benefits paid to military retirees are not.

Presumption of Constitutionality

In determining the constitutionality of K.S.A. 79-3201 *et seq.*, we note the following principles: Construction of a statute is a question of law, and it is the function of this court to construe a statute to give it the effect intended by the legislature. *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 (1989).

The constitutionality of a statute is presumed and all doubts should be resolved in favor of its validity. Before the statute may be struck down, it must clearly appear the statute violates the Constitution. It is this court's duty to uphold the statute under attack, if possible, rather than defeat it. If there is any reasonable way to construe the statute as constitutional, we should do so. *Guardian Title Co. v. Bell*, 248 Kan. 146, 149, 805 P.2d 33 (1991).

However, when legislation encroaches upon constitutional provisions, it is our duty and obligation to declare the legislation unconstitutional. *Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 62-63, 152 P.2d 53 (1944).

### Intergovernmental Tax Immunity and the *Davis* Decision

The taxpayers filed the instant action in response to the United States Supreme Court's decision in *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 103 L. Ed. 2d 891, 109 S. Ct. 1500 (1989). In *Davis,* a retired federal government employee receiving federal civil service retirement benefits challenged the Michigan Income Tax Act (MITA). MITA is similar to KITA. MITA commences with federal adjusted gross income to define Michigan taxable income and allows a deduction for all benefits received from public retirement systems created by the State of Michigan or its political subdivisions. MITA limits the deduction for most other retirement benefits, including federal civil service retirement benefits, to $7,500 for a single return and $10,000 for a joint return. *Davis,* 489 U.S. at 806 n.2.

Davis challenged the taxation of his federal civil service retirement benefits under the doctrine of intergovernmental tax immunity and 4 U.S.C. § 111. 4 U.S.C. § 111 provides in relevant part:

"The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted tax authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

The doctrine of intergovernmental tax immunity carries a traceable lineage to *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819). *McCulloch* held that a state may not impose a discriminatory tax on the Bank of the United States. The United States Supreme Court, speaking through Chief Justice John Marshall, reasoned that the Bank was an instrumentality of the federal government and taxation by the state would interfere with the exercise of federal powers delegated to the Bank.

This doctrine was more fully developed in *Helvering v. Gerhardt,* 304 U.S. 405, 82 L. Ed. 1427, 58 S. Ct. 969 (1938) (the federal government could levy nondiscriminatory taxes on the

income of most state employees), and *Graves v. N.Y. ex rel. O'Keefe*, 306 U.S. 466, 83 L. Ed. 927, 59 S. Ct. 595 (1939) (federal employees were subject to nondiscriminatory taxes levied by the states). "After *Graves*, therefore, intergovernmental tax immunity barred only those taxes that were imposed directly on one sovereign by the other or that discriminated against a sovereign or those with whom it dealt." *Davis*, 489 U.S. at 811.

In effect, 4 U.S.C. § 111 codified the result in *Graves*. The final clause of § 111, "if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation," makes it clear that immunity from taxation was waived for only nondiscriminatory taxes. Because § 111 embodied the modern constitutional doctrine of intergovernmental tax immunity, the United States Supreme Court in *Davis* concluded that the dispositive question was whether MITA violated the doctrine of intergovernmental tax immunity. *Davis*, 489 U.S. at 813-14.

Relying on *Phillips Co. v. Dumas School Dist.*, 361 U.S. 376, 383-85, 4 L. Ed. 2d 384, 80 S. Ct. 474 (1960), the *Davis* court stated: "[T]he relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, 'significant differences between the two classes.'" 489 U.S. at 816.

Michigan unsuccessfully asserted two allegedly significant differences between federal and state retirees.

First, Michigan argued that its interest in hiring and retaining qualified civil servants through the inducement of a tax exemption for retirement benefits justified the preferential treatment of its retired employees. The United States Supreme Court rejected this argument, stating the argument does nothing to demonstrate differences between the classes, but merely demonstrates that Michigan has a rational basis for discriminating between the two similar classes. Michigan's interest, no matter how substantial, was irrelevant. 489 U.S. at 816. An equal protection analysis is irrelevant in the context of intergovernmental immunity. See *Phillips Co.*, 361 U.S. at 383-85.

Second, Michigan argued that its retirement benefits are significantly less munificent than federal retirement benefits in terms of vesting requirements, rate of accrual, and computation of benefit amounts. The substantial differences in the value of the re-

tirement benefits, in Michigan's view, justified the inconsistent tax treatment. 489 U.S. at 816. The *Davis* Court rejected this argument by pointing out that, while the average federal civil servant receives a larger pension than his state counterpart, there are undoubtedly instances in which the opposite is true. The Court stated: "A tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits, as Michigan's statute does; rather, it would discriminate on the basis of the amount of benefits received by individual retirees." 489 U.S. at 817.

The *Davis* Court concluded that MITA violated principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal government employees. Michigan conceded that a refund was appropriate; therefore, *Davis* did not address the issue of retrospective relief. *Davis* was remanded on the issue of prospective relief. The *Davis* Court stated that discriminatory taxation could be avoided by either extending the exemption to federal retirees or removing the exemption for state and local retirees, but recognized that the Michigan courts are in the better position to determine how to comply with the mandate of equal treatment. 489 U.S. at 817-18.

*Davis* relied on *Phillips*, 361 U.S. 376. In *Phillips*, the State of Texas imposed a tax measured by the full value of real property owned by the United States upon the lessee of that property (Phillips Chemical Co.). Real property owned by the United States was exempt from tax. Lessees of exempt property owned by the state and its political subdivisions, with similar lease provisions, were not taxed on their leaseholds.

A unanimous Supreme Court reversed the Texas Supreme Court, holding that the tax imposed on federal government lessees unconstitutionally discriminated against the United States and those with whom it dealt. 361 U.S. at 387. Because the discrimination was apparent, the Court stated: "The imposition of a heavier tax burden on lessees of federal property than is imposed on lessees of other exempt public property must be justified by significant differences between the two classes." 361 U.S. at 383.

Texas argued three differences justified the disparate tax treatment: (1) The State can collect in rent what it loses in taxes from its own lessees, which it cannot do with federal government

lessees; (2) the State may foster its own interests by adopting measures which facilitate the leasing of its property; and (3) the greater magnitude of the federal leasing of exempt land has a greater impact on the finances and operations on local government than does the State's leasing activities. 361 U.S. at 383-84.

The Court in *Phillips* found none of these considerations justified the disparate tax treatment. In regard to the first proffered justification, the Court reasoned that what the Texas political subdivisions lose in taxes from the State's lessees is not made up in increased rent. Other local taxpayers, including the federal government's lessees, must make up the difference. The State's second proffered justification was a legitimate state objective; however, the discriminatory taxation of the federal government's lessees was impermissible regardless of the State's legitimate objective. As to the alleged greater impact of federal leasing, the Court stated that the taxing statute was not based on this difference. The taxing statute imposed its burdens on *all* lessees of government property with no relation to the impact on local government. 361 U.S. at 384-85.

Unfortunately, neither *Davis* nor *Phillips* provide further guidance on how to determine whether the inconsistent tax treatment is "directly related to, and justified by, 'significant differences between the two classes.' "

One post-*Davis* commentator has observed that the courts are now left without easy guidelines to determine whether a state tax is discriminatory. Note, Rejection of the "Similarly Situated Taxpayer" Rationale: *Davis v. Michigan Department of Treasury,* 43 Tax Law. 431, 439-40 (1990).

KITA exempts federal civil service retirement benefits from taxation. In this respect, *Davis* is not directly on point. The crucial issue in the case at bar is whether the inconsistent taxation of federal military retirement benefits is "directly related to, and justified by, 'significant differences' " between federal military retirees and state and local government retirees.

## The Taxpayers' Contentions

The taxpayers contend that the inconsistent tax treatment of military retirees is not directly related to, and justified by, significant differences between the two classes. They advance various

arguments, sometimes overlapping, to support their "no significant difference" contention.

The taxpayers argue that federal military retirees and state and local government retirees are similarly situated and should be treated the same under KITA. In other words, there are no *significant* differences between the two classes. In support of this argument, they assert the trial court emphasized *immaterial* differences. The taxpayers point to the following similar characteristics: (1) both federal military retirees and state and local government retirees are entitled to retire and receive retirement benefits upon satisfying statutory requirements for eligibility; (2) upon retirement both classes of retirees leave active government service; (3) retirees of each class receive retirement benefits based on their number of years of service and their highest salary received before retirement; and (4) Kansas treats both federal military retirement benefits and state and local government retirement benefits as deferred compensation.

### The Defendants' Contentions

Defendants counter, contending that federal military retirees and state and local government retirees are not similarly situated. Defendants mark the following differences: (1) federal military retirees remain members of the armed forces of the United States after they retire from active duty; they are retired from active duty only; (2) federal military retirees are subject to the Uniform Code of Military Justice (UCMJ) and may be court martialed for offenses committed after retirement; (3) they are subject to restrictions on civilian employment after retirement; (4) federal military retirees are subject to involuntary recall; (5) federal military retirement benefits are not deferred compensation but current pay for continued readiness to return to duty; and (6) the federal military retirement system is noncontributory and funded by annual appropriations from Congress; thus, all benefits received by military retirees have never been subject to tax.

In contrast, defendants assert: State and local government retirees are completely severed from employment and have no continuing connection with government employers. State and local retirees are not subject to government personnel procedures or disciplinary rules, and there are no restrictions on their post-

retirement activities. State and local government retirees are not subject to involuntary recall. State and local government retirement benefits are deferred compensation, not current pay. KPERS benefits are funded by regular employee and employer contributions. Participation in KPERS is mandatory, and state employees are required to make contributions to KPERS after working for the State for one year. Employee contributions to KPERS are subject to Kansas income tax in the year in which they are made; thus, KPERS benefits received by State employees include these previously taxed contributions.

The first four differences between military and state and local government retirees asserted by defendants support the contention that federal military retirement benefits are reduced compensation for reduced current services. The reduced compensation for reduced current services difference was the basis for the trial court's decision in the case at bar. Relying on *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), *United States v. Tyler*, 105 U.S. (15 Otto) 244, 26 L. Ed. 985 (1881), and *Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988), the trial court found "that due to the United States Supreme Court's characterization of military retired pay as reduced compensation for reduced current services the KITA must be found constitutional."

### The Federal Cases

The United States Supreme Court held in *Tyler* that a retired military officer was entitled to the benefit of a statute that increased the pay of commissioned officers for every five years of service. The statute applied to the years in the service after retirement as well as before. The Court stated with reference to military retirement pay: "[C]ompensation is continued at a reduced rate, and the connection is continued, with a retirement from active service only." 105 U.S. at 245. The *Tyler* Court concluded:

"It is impossible to hold that men who are by statute declared to be part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, who are subject to the rules and articles of war, and may be tried, not by a jury, as other citizens are, but by a military court-martial, for any breach of those rules, and who may

finally be dismissed on such trial from the service in disgrace, are still *not* in the military service." 105 U.S. at 246.

In *McCarty*, an Army officer challenged a California Superior Court ruling that his "military pension and retirement rights" were subject to division as quasi-community property upon dissolution of marriage. 453 U.S. at 218. The California Court of Appeals affirmed, relying on *In re Marriage of Fithian*, 10 Cal. 3d 592, 111 Cal. Rptr. 369, 517 P.2d 449, *cert. denied* 419 U.S. 825 (1974), which held that military retirement was properly subject to division as community property upon divorce. The California Supreme Court denied McCarty's petition for hearing. 453 U.S. at 218-19.

On appeal to the United States Supreme Court, McCarty argued that "military retired pay in fact is current compensation for reduced, but currently rendered, services" and may not be treated as community property since it is earned after the dissolution of the marriage. 453 U.S. at 221. The United States Supreme Court noted that military retired pay differs in some significant respects from a typical retirement plan: The retired officer remains a member of the Army; the officer continues to be subject to the Uniform Code of Military Justice; the officer may forfeit all or part of retirement pay if certain activities are engaged in; and the retired officer remains subject to recall to active duty at any time. 453 U.S. at 221-22. The *McCarty* Court stated: "These factors have led several courts, *including this one*, to conclude that military retired pay is reduced compensation for reduced current services." (Emphasis added.) 453 U.S. at 222.

We consider the "retired pay is reduced compensation for reduced current services" characterization by the United States Supreme Court in *McCarty* to be significant in resolving the issue before us in the case at bar.

The Court in *McCarty* declined to decide whether federal law prohibits a state from characterizing retired pay as deferred compensation. The Court accepted McCarty's alternative argument that California's community property laws improperly interfered with the federal military system, which indicated that Congress intended military retirement pay to be a personal entitlement of the retiree.

In response to *McCarty*, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub. L. No. 97-252, 96 Stat. 730 (1982). The USFSPA includes 10 U.S.C. § 1408(c)(1) (1988), which authorizes state courts to treat disposable retired pay as marital property. *Mansell v. Mansell,* 490 U.S. 581, 584-85, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989). "Disposable retired or retainer pay" is defined as "the total monthly retired or retainer pay to which a member is entitled," less certain deductions. 10 U.S.C. § 1408(a)(4).

Following congressional enactment of the USFSPA, the Kansas Court of Appeals held that military retirement pay was not marital property and was nothing more than a future stream of income which will cease at the death of the retiree. *Grant v. Grant,* 9 Kan. App. 2d 671, 676, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984). The Court of Appeals concluded: "[M]ilitary retirement pay has no present determinable value which would qualify it as a marital asset subject to division.' 9 Kan. App. 2d at 676. In 1987, Kansas amended K.S.A. 23-201(b) (Ensley 1981) to treat military retirement pay as marital property upon commencement of an action for divorce, separate maintenance, or annulment.

The taxpayers argue that regardless of federal case law, Kansas has opted to treat military retirement pay as marital property and, therefore, not current income. The taxpayers assert that Kansas may not rely on federal case law involving nontaxation issues which state that military retired pay is reduced compensation for reduced current services.

Defendants counter the taxpayers' argument by reasoning that the USFSPA authorizes states to treat military retirement pay as marital property only between spouses in divorce cases. Furthermore, under K.S.A. 23-201(b), military retirement pay is not considered marital property until the commencement of an action for divorce, separate maintenance, or annulment. Defendants reason taxpayers have not alleged the commencement of such an action; consequently, Kansas does not consider their military retirement pay as marital property.

The trial court rejected the taxpayers' K.S.A. 23-201(b) argument, relying on *Cornetta v. United States,* 851 F.2d 1372. The trial court reasoned that the USFSPA did not change the legal

characterization of military retirement pay for any other purpose than cases involving marital property settlements. We agree.

*Cornetta* involved a retired Marine officer who brought a wrongful discharge claim against the government approximately seven years after his discharge. The federal district court dismissed the action on the grounds of laches, finding that the seven-year delay was unreasonable and that the government had been prejudiced by the delay. Initially, the Court of Appeals affirmed the federal district court holding. *Cornetta v. United States,* 831 F.2d 1039 (Fed. Cir. 1987). On motion for rehearing, the court reversed, finding in part that the possibility that the officer might receive increased retirement benefits was not sufficient economic prejudice to the government. The Court of Appeals reasoned:

"Retired pay is reduced pay for reduced current services. *Hotinsky v. United States,* 292 F.2d 508, 510, 154 Ct. Cl. 443 (1961) (an officer draws retired pay because he is 'still an officer' in service of country); *Lemly v. United States,* 75 F. Supp. 248, 249, 109 Ct. Cl. 760 (1948) (an officer receiving retired pay 'is still an officer in the service of his country even though on the retired list'); *see United States v. Tafoya,* 803 F.2d 140, 142 (5th Cir. 1986) (retired pay is " 'current pay" designed in part to compensate [an officer] for his continuing readiness to return to duty should his country have need to call upon him'); *Costello v. United States,* 587 F.2d 424, 427 (9th Cir. 1978) ('retirement pay does not differ from active duty pay in its character as pay for continuing military service'); *Berkey v. United States,* 361 F.2d 983, 987 n.9, 176 Ct. Cl. 1 (1966) (retired pay 'has generally not been considered a pension, grant, or gratuity, but as something the serviceman earns and has earned'). . . .

"Unlike an award of back pay where the government in effect pays for unperformed service, receipt of retired pay by an officer means the government will pay for the reduced service it then receives. This is no detriment; the government gets what it pays for." 851 F.2d at 1382.

*Cornetta* noted that 10 U.S.C. § 1408(c)(1) did not affect the characterization of military retired pay as reduced compensation for reduced current services. 851 F.2d at 1382 n.3 (citing *United States v. Tafoya,* 803 F.2d 140, 142 n.7 [5th Cir. 1986]).

We consider the status analysis of military retirement pay found in *Cornetta* significant.

In *Tafoya,* the defendant appealed from a court order withholding a portion of his army retirement pay to repay the government for services rendered by a public defender. The *Tafoya* court noted: "By some quirk of history, however, Tafoya's re-

tirement pay is actually not 'retirement pay'; it is instead 'current pay' designed in part to compensate Tafoya for his continuing readiness to return to duty should his country have need to call upon him." 803 F.2d at 142 (citing *McCarty*). Current pay may not be offset absent specific statutory authority. The court in *Tafoya* noted that *McCarty* had been superseded by statute but found that the classification of military retired pay as current pay remains viable. 803 F.2d at 142 n.7. After determining military retired pay is current pay, the court denied the right of setoff, finding no statutory authority to set off Tafoya's pay. 803 F.2d at 143. *Tafoya's* "current pay" determination of military retired pay extends cumulative support to affirmance of the trial court in the instant case.

In *Costello v. United States*, 587 F.2d 424 (9th Cir. 1978), military retirees brought suit to challenge statutory changes to military retirement compensation. The retirees argued that military retirement pay is deferred compensation for past services, which could not be prospectively altered. The Ninth Circuit rejected this argument, finding that military retirement pay does not differ from active duty pay in its character as pay for continuing military service. The compensation could be prospectively altered without offending due process. 587 F.2d at 427-28. *Costello* provides a Ninth Circuit endorsement of the similar character of military retired pay and active duty pay.

In *In re Siverling*, 72 Bankr. 78 (Bankr. W.D. Mo. 1987), creditors objected to the debtor's claim that his military retirement pay was not property of the estate under 11 U.S.C. § 541(a)(6) (1988). 11 U.S.C. § 541(a)(1) provides that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." However, "earnings from services performed by an individual debtor after the commencement of the case" are not property of the estate. 11 U.S.C. § 541(a)(6). The court cited *Tyler* and *McCarty*, finding military retirement pay is "reduced compensation for reduced current services" and not property of the estate. 72 Bankr. at 78-79.

These federal cases offer interpretative assistance and demonstrate the current vitality of *Tyler's* conclusion in 1881 that military retirement pay is reduced current compensation for re-

duced current services. In addition, *Cornetta, Tafoya,* and *Siverling,* all post-USFSPA cases, indicate that the USFSPA has not changed the federal characterization of military retirement pay as reduced current compensation for reduced current services.

## The IRA Deduction

The taxpayers also argue that KITA considers military retirement pay as a pension, annuity, or deferred compensation; therefore, KITA may not also consider military retirement pay as current compensation. Because Kansas utilizes federal AGI to calculate Kansas taxable income, Kansas has incorporated 26 U.S.C. § 219 (1988) into KITA.

26 U.S.C. § 219 governs the deductibility of taxpayer contributions to an individual retirement account (IRA). The IRA deduction is limited to the amount of the taxpayer's "compensation" for the tax year. 26 U.S.C. § 219(b). For purposes of § 219, "the term 'compensation' does not include any amount received as a pension or annuity and does not include any amount received as deferred compensation." 26 U.S.C. § 219(f)(1). Each "active participant" in a retirement or pension plan "established for its employees by the United States, by a state or political subdivision thereof, or by an agency or instrumentality of any of the foregoing," is subject to further limitations on the IRA deductions which may render the deduction unavailable. 26 U.S.C. § 219(g)(1), (2), and (5)(A)(iii).

Under § 219(f)(1), "Retirement income, including federal, civil and military retirement income, is not compensation for purposes of making deductible contributions to an IRA." 6 Mertens Law of Federal Income Taxation § 25C.12, p. 58 (1988).

"This interpretation is consistent with the legislative intent behind the enactment of the tax law relating to IRAs. The purpose of an IRA is to give employees or self-employed individuals the opportunity to set aside some of their earnings for retirement. [Citations omitted.] To base an IRA deduction upon contributions made with retirement pay would be inconsistent with this purpose." IRS Letter Ruling 8227053 (CCH) (April 9, 1982).

Section 219 does not consider military retirement pay as current income for reduced current services. However, this limited definition of "compensation" applies to § 219 *only.* 26 U.S.C. § 219(f)(1). As noted above, to allow an IRA deduction for contributions made with retirement pay would be inconsistent with

the purpose of an IRA, regardless of whether retirement pay is "deferred compensation" or "reduced compensation for reduced current services." Additionally, compensation does not include *current income* from passive sources such as rental income, interest income, and dividend income. Mertens, § 25C.12, p. 58.

Thus, the distinction is not so much the characterization as current income or deferred compensation, but rather active versus passive activities required to earn the income.

### Funding Differences

Defendants also rely on the difference in funding the military retirement system and state and local retirement systems. State and local retirement benefits are funded by employee and employer contributions. See, *e.g.*, K.S.A. 1990 Supp. 74-4919(1) (KPERS employee contribution) and K.S.A. 1990 Supp. 74-4920 (KPERS employer contribution). The employee's contribution is taxed by Kansas in the year that it is made. K.S.A. 1990 Supp. 79-32,117(b)(vi); K.S.A. 1990 Supp. 74-4919(2). Part of the state and local government retirement benefits received after retirement include previously taxed contributions.

In contrast, the military retirement system is noncontributory. Neither military personnel nor the armed forces contribute to the military retirement system. The military retirement system is funded by annual appropriations from Congress. *McCarty v. McCarty*, 453 U.S. 210, 214, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). All military retirement benefits received by military retirees consist of money which has never been subject to tax. The federal government's method of funding prevents Kansas from taxing a portion of the military retirement benefits before such benefits are received.

The taxpayers argue that the inconsistent taxation of state and local retirement pay and federal military retirement pay is not directly related to significant differences between the two classes. Kansas income tax exemptions are identified strictly by source under K.S.A. 1990 Supp. 79-32,117(c). If the inconsistent tax treatment were directly related to significant differences, the taxpayers claim, KITA would not base its distinctions on source but instead would base them on: (1) retirees who completely retire versus retirees who retire from active duty only; (2) retirees who

are subject to involuntary recall; (3) retirees who are subject to the Uniform Code of Military Justice; (4) retirees who are subject to post-retirement restrictions; and (5) retirees who participate in a contributory retirement program. The taxpayers rely on *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 817, 103 L. Ed. 2d 891, 109 S. Ct. 1500 (1989), which stated: "A tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits, as Michigan's statute does; rather, it would discriminate on the basis of the amount of benefits received by individual retirees."

Defendants counter this "basis of the source" argument by pointing out that the statement from *Davis* quoted above followed the *Davis* Court's rejection of Michigan's proffered rationale for its inconsistent tax treatment. Michigan contended that the inconsistent tax treatment was justified because federal civil service retirement benefits were more munificent than Michigan's state retirement benefits. Specifically, Michigan asserted that the value of federal civil service benefits was larger than the value of state retirement benefits. The *Davis* Court observed that the average federal civil servant receives a larger pension than his or her state counterpart but that there are individual instances in which the opposite holds true. *Davis*, 489 U.S. at 817.

Defendants then advance the language accompanying the quoted statement:

"A tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits, as Michigan's statute does; rather, it would discriminate on the basis of the amount of benefits received by individual retirees. *Cf. Phillips Chemical Co., supra,* at 384-385 (rejecting proffered rationale for State's unfavorable tax treatment of lessees of federal property, because *an evenhanded application of the rationale would have resulted in inclusion of some lessees of State property in the disfavored class as well)*." (Emphasis added.) *Davis,* 489 U.S. at 817.

Defendants contend that the differences between the two classes, those receiving federal military retirement benefits and those receiving state and local government retirement benefits, are common to all members of each class. Thus, an evenhanded application of the rationale for taxing all members of one class

(military retirees) does not result in taxation of some members of the other class (state and local government retirees).

We agree with this interpretation of *Davis*. All persons receiving federal military retirement benefits receive current compensation while all persons receiving state and local government retirement benefits receive deferred compensation. The fact that KITA exempts federal civil service retirement benefits and federal railroad retirements benefits is further evidence that KITA taxation of federal military retirement benefits is not based on the federal government source.

### Other Federal Retirees

Taxpayers also assert inconsistent tax treatment of retirement benefits of other federal retirees. For example, federal retirement systems for members of the CIA, Foreign Service, bankruptcy judges, and United States magistrates are all contributory, yet these classes of federal retirees are subject to Kansas income tax. Similarly, retirement benefits received by retired members of the Public Health Service (PHS) and the National Oceanic and Atmospheric Administration (NOAA) are taxed under KITA. However, retirement benefits received under federal civil service retirement or by retired railroad employees are exempt. K.S.A. 1990 Supp. 79-32,117(c)(vii) and (viii). Taxpayers argue that these differences indicate no rhyme or reason for the disparate tax treatment.

Defendants assert that it is inappropriate to look at other federal retirement benefits, arguing that the justifications for taxing other federal retirement benefits do not affect whether the taxation of military retirement benefits are directly related to the differences between military retirees and state and local government retirees. The legal interests of other federal retirees are not at issue in this appeal. The justifications for taxing these federal retirement benefits should be addressed if and when they are challenged and properly before the court.

As pointed out by taxpayers, military retirement benefits are unique in comparison to other federal retirement benefits. If another class of federal retirees had exactly the same characteristics as the class of military retirees and was taxed differently, that fact would be relevant. However, absent such a circumstance,

such comparisons are not helpful given the uniqueness of the military retirement system.

Finally, taxpayers argue that inconsistent tax treatment is not *justified by* significant differences between the two classes. They contend that the noncontributory funding of military retirement benefits does not justify differential tax treatment and military retirement pay cannot be characterized as reduced compensation for reduced current services to justify inconsistent taxation.

The resolution of the primary issue in this appeal depends on our agreement with, and acceptance of, the rationale of the federal cases holding that military retirement pay is reduced current compensation for reduced current services.

Several state courts have rejected the contention that military retirement pay is reduced compensation for reduced current services. These courts have held that military retirement pay is realistically viewed as deferred compensation. *In re Marriage of Fithian,* 10 Cal. 3d 592, 111 Cal. Rptr. 369, 517 P.2d 449, *cert. denied* 419 U.S. 825 (1974); *In re Marriage of Gallo,* 752 P.2d 47, 52-54 (Colo. 1988); *In re Marriage of Howell,* 434 N.W.2d 629, 632 (Iowa 1989); *United States v. Miranda,* 581 S.W.2d 711, 711-12 (Tex. Civ. App. 1979); and *Greene v. Greene,* 751 P.2d 827, 830-31 (Utah App. 1988), *cert. denied* 765 P.2d 1278 (Utah 1988).

A state is justified in taxing reduced current compensation paid for reduced current services while not taxing deferred compensation. We agree with, and accept, the rationale of the federal cases.

## The Post-*Davis* Cases

*Davis* has generated litigation in states which taxed federal retirement benefits while exempting state and local government benefits. See *Bohn v. Waddell,* 164 Ariz. 74, 790 P.2d 772 (T.C. 1990), *aff'd on reconsideration* 82 Ariz. Adv. Rep. 52, 807 P.2d 1 (T.C. 1991); *Pledger v. Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991); *Hackman v. Director of Revenue,* 771 S.W.2d 77 (Mo. 1989), *cert. denied* 107 L. Ed. 2d 738 (1990); *Ragsdale v. Dept. of Rev.,* 11 Or. T. R. 440 (1990); *Bass v. State,* 302 S.C. 250, 395 S.E.2d 171 (1990), *vacated and remanded* 115 L. Ed. 2d

1047 (1991); *Harper v. Virginia Department of Taxation,* 241 Va. 232, 401 S.E.2d 868, *vacated and remanded* 115 L. Ed. 2d 1049 (1991); *Hogan v. Musolf,* 157 Wis. 2d 362, 459 N.W.2d 865 (Ct. App. 1990), *rev'd* 163 Wis. 2d 1, 471 N.W.2d 216 (1991).

*Bohn* was a suit brought by five plaintiffs—two retired United States military retirees, one United States civil service retiree, and two spouses of the military retirees. Arizona's tax scheme started with federal adjusted gross income and provided a deduction for all benefits received from Arizona state retirement systems. Only a $2,500 deduction was provided for benefits received from the United States civil service retirement system. No deduction was provided for military retirement benefits. Shortly after *Davis,* the Arizona legislature amended its income tax laws to give all state and federal pensioners a $2,500 deduction. The Arizona Tax Court in *Bohn* declared the prior Arizona tax scheme unconstitutional. The tax court stated: "The income tax treatment of state and federal pensions cannot be equal if the treatment of all federal pensions is not the same." 164 Ariz. at 82. Aside from this statement, *Bohn* provides little helpful analysis for the case at bar. There is no mention of any argument advanced by Arizona to uphold the disparate treatment of military retirees. In light of the legislative action, it appears that the Arizona legislature believed that federal civil service retirees are similarly situated to federal military retirees.

In *Hackman,* plaintiffs were a federal military retiree and his spouse. The Missouri scheme started with federal AGI. The scheme allowed deductions for retirement benefits received from state and local government retirement systems while allowing no deductions for retirement benefits from nonstate retirement plans. The court stated: "4 U.S.C. § 111 draws no distinction between federal military personnel; nor shall we draw such a distinction." 771 S.W.2d at 80. However, the Missouri Director of Revenue conceded that Missouri's taxation scheme offended 4 U.S.C. § 111 under *Davis.*

In *Ragsdale,* a federal pensioner brought the action to challenge Oregon tax laws which exempted pensions of state and local employees while taxing pensions of federal employees. The Oregon Tax Court found that Oregon's tax provisions came within the

*Davis* holding. *Ragsdale* did not involve military retirees and provides little assistance on this issue.

Following *Davis,* South Carolina amended its tax laws to comply with *Davis. Bass,* 302 S.C. at 252. The only issue in *Bass* was whether *Davis* should apply retrospectively.

*Harper* was a challenge by federal civil service retirees and federal military retirees who sought refunds for taxes paid in the tax years of 1985-1988. The only issue before the court was whether *Davis* should apply prospectively. Virginia's General Assembly amended its tax statutes to comply with *Davis.*

*Hogan* was a class action brought by federal retirees following *Davis.* The Wisconsin legislature amended its tax statute to comply with *Davis* for tax years beginning in 1988. Because *Hogan* did not involve military retirees and because Wisconsin amended its statute to comply with *Davis, Hogan* is not helpful.

In *Pledger,* the Arkansas Supreme Court reviewed a class action certification issue. The Arkansas class certified by the lower court consisted of three groups of retired Arkansas residents from: (1) various United States civil service agencies; (2) various branches of the United States armed services; and (3) the agencies and political subdivisions of other states. A question on appeal was the propriety of including military retirees and retirees from other states in the certified class. The Arkansas Supreme Court affirmed the inclusion of both groups. The *Pledger* court relied on three of its own divorce case opinions in reasoning "that those cases which hold that military pay is actually deferred compensation or in the nature of a pension represent the better reasoned application law." Slip Op. at 10. No mention is made of *Tyler, McCarty, Cornetta, Tafoya, Costello,* or *Siverling.*

Of the post-*Davis* cases, *Bohn, Hackman,* and *Pledger* reasoned that civil service retirees and military retirees should be treated alike.

In our view, the district court in the case at bar was justified in relying on federal precedents.

### The Kansas Constitution

Without discussion or explanation, the trial court concluded that KITA does not offend Article 11, § 2 of the Kansas Consti-

tution. Apparently, the trial court based this holding on the same reasoning used to reject taxpayers' challenge under *Davis*.

Article 11, § 2 prohibits the State from levying or collecting income taxes based upon classifications which are arbitrary, capricious, and discriminatory. A discriminatory tax must have a reasonable relationship to the subject of the right and privilege taxed. *Hartman v. State Commission of Revenue and Taxation*, 164 Kan. 67, 77-78, 187 P.2d 939 (1947). Nothing forbids different taxation of different classes where there is a reasonable basis for differentiation. See *Missouri Pacific Railroad Co. v. McDonald*, 207 Kan. 744, 752, 486 P.2d 1347 (1971).

Taxpayers contend, as demonstrated by their arguments on intergovernmental tax immunity, that KITA artificially, unnaturally, and irrationally discriminates in favor of state and local government retirees and federal civil service retirees against federal military retirees solely on the basis of the source. Taxpayers assert that, because all such retirees belong to the same class of public sector retirees, the unequal tax burden does not have a reasonable relation to the subject matter.

Defendants correctly point out that the standard of review under Article 11, § 2 of the Kansas Constitution is a more lenient standard than that mandated in *Davis*. Under *Davis*, the discriminatory tax must be directly related to and justified by significant differences between the classes. Under Article 11, § 2, the discriminatory tax must bear a reasonable relationship to the subject taxed. Defendants argue that the State has a legitimate purpose in providing an orderly means whereby state and local employees may retire without hardship (to enable employees to provide for old age and to effect economy and efficiency of government affairs). A tax exemption for state and local government employees is rationally related to this purpose. Further, the State has a "rational reason" for discriminating between state and federal retirees when it seeks to advance its interest in hiring and retaining qualified employees.

We have held KITA constitutional under principles of intergovernmental tax immunity. It is constitutional under Article 11, § 2 of the Kansas Constitution. The discriminatory tax bears a reasonable relationship to the subject taxed. The tax is not arbitrary or capricious.

Having held KITA to be constitutional, we need not address the remaining issues raised by the taxpayers.

Affirmed.

McFARLAND and HERD, JJ., not participating.

MICHAEL J. MALONE and DEAN J. SMITH, District Judges, assigned.